Lyle vs. McCormick Harvesting Machine Co.

---

LYLE, Respondent, vs. McCORMICK HARVESTING MACHINE COMPANY, Appellant.

*October 15 — October 30, 1900.*

*Promissory notes: Agreement to return to maker: Breach: Damages: Insolvency of maker: Special verdict: Instructions to jury.*

1. For breach of a contract to return a promissory note to the maker upon demand there may be a recovery of actual damages, although the maker has not paid the note.

2. If, in such a case, the note has been transferred to a *bona fide* holder, the damage to the maker is the continued existence of his liability thereon, and the measure of his recovery would be the value of the note, where no special damage is shown.

3. *Learned v. Bishop,* 42 Wis. 470, and *Selleck v. Griswold,* 57 Wis. 291, distinguished.

4. The fact that the maker of the note, in such a case, is insolvent or "execution proof" does not necessarily render the note valueless or preclude damage to him from the existence of the liability. At most, his financial condition is a circumstance to be considered in assessing the damages.

5. The jury having been instructed, in such a case, that the measure of damages was the actual value of the note, and that plaintiff's solvency was an element to be considered in ascertaining the amount, it was not error to refuse to submit in the special verdict a question as to whether judgment against plaintiff on the note could be collected on execution.

6. Where a special verdict is to be rendered, general rules of law governing the rights of parties should not be given to the jury in the

charge so as to inform them of the effect of their answers to the questions submitted; but general instructions as to the weight of evidence, burden of proof, and the conduct of the jury generally, are proper.

7. The refusal to give an instruction which is in part improper is not error, since under sec. 2853, Stats. 1898, it must be given without change, as requested, or refused in full.

8. Where a question in a special verdict is in itself so clear and unambiguous as not to require any explanatory or qualifying charge, the omission or refusal to give an instruction of that nature is not a prejudicial error, even though the instruction was a proper one.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Affirmed.*

The following facts are alleged by the complaint, and substantially found to exist by a special verdict had after trial, to wit:

The plaintiff, on January 3, 1898, purchased from the defendant a corn husker, a sale of which in the previous year had, by consent, been rescinded, and on that day gave therefor his negotiable note for $150, due December 1, 1898, under a contract signed by both parties, whereby the defendant agreed to fix the husker in first-class shape, " make the same do good work, and satisfactory to the average witness for whom *W. J. Lyle* may husk corn in 1898; the machine subject to one day's trial. If the company fail to comply with any part of this agreement, *Lyle* can return the machine to Fox Lake, and his notes will be returned," etc. Plaintiff notified defendant of his desire to start the machine on January 21st, and called on them to make it work. Their duly authorized agent attended at the time, but went away without starting the machine, as he claims, by consent of plaintiff, but, as plaintiff claims, without such consent. The jury found with the plaintiff. Thereafter, on March 23d, the plaintiff returned the machine to Fox Lake, notified defendant of the fact, and then, or on April 14, 1898, demanded return of his note, which was refused. It also appeared that

before commencing this suit the note had been transferred to an innocent third party, for value, and by him sued and put in judgment against the plaintiff in the sum of $166.20, of date February 7, 1899, which the plaintiff had not paid. There was some evidence of plaintiff's own declarations, made before suit upon the note, that he was execution proof. Whether the negotiation of the note preceded or followed plaintiff's demand for its delivery did not appear.

The only questions of the special verdict involved in the errors assigned are the sixth: "Did the plaintiff consent, expressly or impliedly, to postpone the fixing and testing of the machine, or that it need not be done on January 21, 1898?" answered, "No;" and fifteenth: "At what sum do you assess plaintiff's damages?" answered, "$150."

Motion for nonsuit was made at the close of the plaintiff's case, and motion to direct a verdict for the defendant at the close of all the testimony, for the reason, amongst others, that the plaintiff had failed to prove any damages. Defendant also requested instruction that only nominal damages could be awarded. Such motions being overruled, defendant requested submission of the question: "Could the judgment obtained by J. H. Weber against the plaintiff upon his note, which has not been paid, be collected upon execution?" which request was refused. Plaintiff also requested an instruction as follows: "I instruct you that it is immaterial whether plaintiff or defendant first suggested that the machine should not be tried or tested on January 21, 1898, by Mr. Jones. If the plaintiff agreed or consented, expressly or impliedly, by word or act, that the machine need not be tried at that time, then your answer to the sixth question must be in the affirmative." That also was refused.

From a judgment for plaintiff upon the verdict for the sum of $150, interest, and costs, the defendant appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles*, and oral argument by *W. C. Quarles*. They con-

tended, *inter alia*, that an action for a breach of a covenant.
against damage because of liability cannot be maintained
without allegation and proof of loss or injury. It is not.
sufficient that a judgment has been entered. *The judgment
must be paid.* In this case it is admitted that no payment.
has been made and that no loss or injury has been proven.
*Selleck v. Griswold,* 57 Wis. 291; *Taylor v. Coon,* 79 Wis. 77;
*Maloney v. Nelson,* 144 N. Y. 182; *Aberdeen v. Blackmar,* 6
Hill, 324; *Learned v. Bishop,* 42 Wis. 470; *Thompson v.
Taylor,* 30 Wis. 68. In an action for the *conversion* of the
note of a third party there might be a recovery of the act-
ual value of the note; but this action does not sound in tort,
and there could be no recovery beyond nominal damages,
it appearing that plaintiff has suffered no money loss, and
that the judgment entered upon the note could not be col-
lected. *Gaylor v. Hunt,* 23 Ohio St. 261; *Freeman v. Ven-
ner,* 120 Mass. 426.

For the respondent the cause was submitted on the brief
of *North & Lindley,* attorneys, and *M. L. Lueck,* of coun-
sel. They argued, among other things, that the true meas-
ure of damages is the amount due on the note, irrespective
of plaintiff's failure to pay the same, or his solvency or in-
solvency. The gravamen of this action is the wrongful act
of the defendant in refusing to return the note and causing
a note without value, except to a *bona fide* holder, to be-
come valuable by the sale and transfer thereof to a pur-
chaser against whom the defenses to the same could not be
urged. *Decker v. Mathews,* 12 N. Y. 313; *Metropolitan E.
R. Co. v. Kneeland,* 120 N. Y. 134; 3 Sutherland, Damages.
(2d ed.), 2442; *Winona v. Minn. R. C. Co.* 29 Minn. 68.

DODGE, J.    1. The first, second, and third assignments of
error naturally fall together for the purposes of discussion..
They present the question whether plaintiff has shown him-
self entitled to any damages, and, if so, to what amount.

These questions were raised by the motion for nonsuit and
for direction of verdict and for an instruction to allow only
nominal damages for the reason that no actual damages had
been proved.  Appellant's position is predicated upon the
propositions: (1) That the action is not in tort, for the rea-
son that the disposal of the note by the defendant is not
alleged to have been wrongful, and that it is neither alleged
nor proved that the note was in its possession or control at
the time when plaintiff's contract right to and demand for
its delivery came; therefore no conversion or other wrong
could be committed by refusing its delivery.  (2) That, being
an action on contract, it falls within the class of those where
the contract is substantially one of indemnity, and in this
case is to be construed as indemnity only against the damage
resulting from liability on the note, and therefore cannot be
maintained until damage has been actually suffered by the
compulsory payment of the note or the judgment thereon.
(3) That, defendant being insolvent, the note has no value,
and liability thereon occasions him no damage.

In the view we have taken of the other propositions, the
first need not be authoritatively decided.  It is urged in re-
sponse thereto that, although no tort may have been com-
mitted at the time of refusing plaintiff's demand, still the
defendant was under a duty to retain the note within its
control so as to enable its delivery in case the plaintiff de-
manded it, and that its disposal thereof even before demand
was in breach of that duty to the plaintiff, and therefore a
conversion.  In either event the measure of damage would
be the value of the note *prima facie*, there being no special
damages alleged.  Such value, of course, might involve con-
sideration of plaintiff's financial condition, and perhaps other
circumstances.

The second proposition presents an interesting and some-
what novel question, upon which no entirely direct author-
ity has been cited, and little has resulted from our own re-

search.   The principle is well recognized that, in case of an agreement to indemnify, ordinarily the construction of indemnity against damage only will be adopted, rather than indemnity against mere liability.   This proposition is decided in *Thompson v. Taylor*, 30 Wis. 68, 72, and *Taylor v. Coon*, 79 Wis. 83, while the enforceability of a contract of indemnity clearly against liability alone is established by *Smith v. C. & N. W. R. Co.* 18 Wis. 17, 24.   This contract before us, however, on its face is not a contract of indemnity.   It is a plain and simple contract, under the circumstances shown to exist, to deliver up plaintiff's note upon demand.   That demand being made, and not complied with, a distinct and complete breach of defendant's contract was committed, and no reason is apparent why the plaintiff should not have a right to maintain an action upon such breach for whatever damages he has suffered.   The measure of damages in an action for the breach of a contract is, of course, contractual. It is that which the defendant, either expressly or impliedly, has agreed to pay upon nonfulfilment of his stipulation. Where there is no express agreement as to what those damages shall be, the law raises the implication that they shall be compensation for what the plaintiff suffers *by reason of the breach*, so far as reasonably to be contemplated by the parties at the time of contracting.   Analyzing the situation in the light of that principle, obviously the damage which fell upon the plaintiff in this case by reason of noncompliance with the agreement to deliver up his note was the continued existence against him of a liability thereon; a liability the very existence of which was a breach of his right. The question, therefore, for trial was, What would compensate him for that liability ?   It cannot be said that the damage which he suffered by defendant's breach of its contract could only be what he might at some future time have to pay, for that would not be the damage falling upon him at the time of and by reason of the breach.   That would result

from various subsequent circumstances. If the note were in the hands of the defendant, overdue, so that a perfect defense thereto might be made, he might ultimately have to pay nothing, or only the expenses of defense, while under other circumstances he might be put to expense and pecuniary loss much greater than the amount of the note.

In *Barth v. Graf*, 101 Wis. 27, 40, this general subject was considerably discussed, and the language of CHURCH, C. J., from *Kohler v. Matlage*, 72 N. Y. 259, was quoted with approval, as follows: "It is settled that upon an obligation to do a particular thing, or to pay a debt for which the covenantee is liable, or to indemnify against liability, the right of action is complete on the defendant's failure to do the particular thing he agreed to perform, or to pay the debt, or discharge the liability." This language was used in a case where a retiring partner gave bond to his copartners to pay on a day fixed certain debts for which all were liable. On his failure so to do, the obligees were held to have a complete cause of action for the amount of those debts; the court saying that, if there had been merely a bond to indemnify against damage by reason of those debts, no cause of action would have existed until they had actually paid them. This view was also taken in *Loosemore v. Radford*, 9 Mees. & W. 657, in which case the defendant, a debtor, had agreed with the plaintiff, his surety, that he would pay the guaranteed debt by a day certain. On failure so to do, it was held that the cause of action of his surety was complete, although the latter had not been called on to pay. Numerous other authorities similar in effect may be found. *Lathrop v. Atwood*, 21 Conn. 125; *Redfield v. Haight*, 27 Conn. 31; *Gage v. Lewis*, 68 Ill. 604, 617; *Merriam v. Pine City L. Co.* 23 Minn. 314, 322; *Johnson v. Britton*, 23 Ind. 105; *Wilson v. Stilwell*, 9 Ohio St. 467; Sedgwick, Damages (8th ed.), §§ 786, 789.

The reasoning of these cases seems to us founded on sound

Lyle vs. McCormick Harvesting Machine Co.

principle.   The breach of contract by the defendant is complete, and in analogy to all other situations the plaintiff should have his right of action therefor.   If the measure of his damages is still involved in some degree of uncertainty, or if possibly a recovery of the full amount of the face of the note may work injustice to the defendant, still it must be remembered that the situation results from the fault of the latter, and not of the former.   The postponement of the plaintiff's recovery till he has paid, especially if he be poor or embarrassed, may subject him to serious injuries meanwhile, enhanced by his poverty.   His attempts to do business or to emerge from his state of insolvency may be thwarted at every turn by the impairment of his credit from the mere existence of the liability.   Any property acquired by him may be promptly sacrificed in the effort to enforce that liability, and still the debt remain unpaid, and he without remedy; and that, too, without any fault on his part save poverty.   As between the two, inconvenience should fall on the guilty rather than the innocent.

The peril, suggested by defendant, that plaintiff may recover and collect judgment against defendant, and still not pay the note, was pointed out, and held not sufficient to prevent a recovery, in *Loosemore v. Radford*, 9 Mees. & W. 657, and was considered in *Johnson v. Britton*, 23 Ind. 105, where it was shown that under Code practice, where law and equity are administered by the same court, it might readily be averted by equitable counterclaim.

Two decisions of our own court are cited by appellant as in conflict with conclusions here reached, namely, *Learned v. Bishop*, 42 Wis. 470, and *Selleck v. Griswold*, 57 Wis. 291. In those cases a purchaser of real estate had assumed and agreed to pay certain incumbrances thereon.   The holders of those incumbrances had thereafter demanded and taken proceedings to enforce payment of the indebtedness secured by such incumbrances against the grantors, and the latter

had sued their grantees. The court disposed of the cases on the ground that the effect of the contract assuming and agreeing to pay the debts was to constitute the purchasers of the land principal debtors, and the grantors sureties merely, whereupon they applied the familiar doctrine that the implied contract from a principal to his surety is merely to protect the latter from damage resulting to him by reason of the liability assumed, not to indemnify him against liability alone,— a principle reiterated in *Momsen v. Noyes,* 105 Wis. 565. The grounds upon which these decisions went, as well as the fact that there was no time specified at which the grantees of the land had agreed to pay these debts, we think clearly distinguish them in principle from the class of cases last before cited and from the case in hand. The case of *Learned v. Bishop* is further distinguishable by the fact that it was not an action for a breach of the contract to pay the incumbrance, but was a suit in equity to foreclose a mortgage given to secure an agreement to pay that debt and to hold the mortgagee harmless from it; and relief was refused on the ground that the only part of the contract which the mortgage secured was the indemnity clause, which would not be breached until the mortgagee suffered harm.

From what has been said it is apparent that no error was committed in refusing to hold that no damages, or only nominal damages, had been suffered, because the plaintiff was insolvent or execution proof, even if such fact conclusively appeared. A note is not necessarily entirely valueless because its maker is insolvent, or because no property subject to execution exists. Many a note has been paid notwithstanding such condition. That situation, too, would largely disappear upon recovery of judgment in plaintiff's favor which might be in reach of execution. Still less is it true, as already pointed out, that insolvency precludes damage to the maker of such a note from its existence as a liability against him. At most, plaintiff's financial condition

was a circumstance to be considered by the jury in assessing the damages.    It was so treated.

2. Error is assigned for that the court refused defendant's request to submit a question for consideration: "Could the judgment obtained by J. H. Weber against the plaintiff upon his note, which has not been paid, be collected upon execution?"    Defendant points out that there was evidence of declarations made by the plaintiff of his insolvency and invulnerability to execution at some previous date.  The court submitted to the jury question 15, as to the amount of plaintiff's damages, and instructed them generally that the measure of damages is *prima facie* the amount due on the note, but that the defendant was at liberty to reduce this valuation or amount by showing the insolvency of the maker thereof; the measure of damages being the actual value of the note to be found from the evidence.    We think no error was committed in refusing to submit this question.    The special verdict should properly pass upon all the material controverted issues of the case, but ordinarily there is no propriety in going further and inviting the jury to pass upon each conflict of testimony upon evidentiary facts.    *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 220; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 317.    The jury were informed that the solvency or collectibility of the plaintiff was an element to be taken into consideration in ascertaining the amount of his damages.    This sufficiently submitted to them the question which would have been presented by defendant's interrogatory, which at best was merely a collateral consideration in reaching a conclusion upon the real issue of the amount of the plaintiff's damage.

3. The charge is criticised as being a general one, and not merely a series of directions calculated to aid the jury in understanding and answering the several questions submitted to them, within the remarks of this court in *McDermott v. Jackson,* 102 Wis. 419; *Fox v. Martin,* 104 Wis. 581; *Rhyner*

*v. Menasha,* 107 Wis. 201. We are unable to discover any error in this respect prejudicial to the defendant. True, the court did not — as is very good practice — take up each question and explain to the jury its meaning and their method of consideration of it. It is due to the court, however, to say that most of the questions were so clear and unambiguous that such instruction was hardly necessary. The charge is made up of general instructions as to weight of evidence, burden of proof, and the conduct of the jury generally, more or less applicable to their consideration of every question; but we do not find it obnoxious to the criticism that general rules of law governing the rights of the parties are given to the jury therein so as to inform the latter of the effect of their answer either way to any interrogatories. *Ward v. C., M. & St. P. R. Co.* 102 Wis. 225; *New Home S. M. Co. v. Simon,* 104 Wis. 120, 126. It should also be borne in mind that no requests for specific instructions with reference to any of the questions were made by the defendant, except as hereafter discussed.

4. The sixth assignment of error is predicated upon the court's refusal to give the instruction as to the sixth question set out in the statement of facts. This instruction is open to the criticism that the only portion of it which is in any wise broader or more instructive than the question itself is obnoxious to the rule stated under the last assignment,— that instructions of a general character, such as to inform the jury of the effect of their conclusions upon the rights of the parties, should not be given. It substantially informed the jury that the rights of the parties were not to be affected by the question of who suggested that the machine should not be tried or tested on June 21st. In that respect it is improper, and under the provision of the statutes that an instruction is to be either refused or given in the exact words in which it is presented no error can be predicated upon its refusal alone. We think, also, that the question itself was

so clear and unambiguous as not to require, for the protection of either party, any qualifying charge; so that failure to caution the jury in the line suggested by appellant's request was not prejudicial, although such caution, if given, might not have been improper.

*By the Court.*— Judgment affirmed.