# CASES DETERMINED

AT THE

## January Term, 1901.

FIRST AVENUE LAND COMPANY, Appellant, vs. PARKER, Respondent.

*April 30 — June 20, 1901.*

| 111 | 1 |
|-----|------|
| 111 | ¹649 |

| 111 | 1 |
|------|------|
| e116 | ¹349 |

*Corporations: Illegal issue of stock: Estoppel: Breach of officer's bond: Damage to corporation: Pleading: Liability for deceit.*

1. Corporate stock issued without consideration, in violation of sec. 1753, Stats. 1898, is void even in the hands of innocent purchasers to whom new certificates have been issued, and no estoppel of the corporation gives to such purchasers the rights of stockholders. In an action by the corporation upon the bond of its officer who wrongfully issued such stock there can be no recovery, therefore, on the ground that such issue damaged the corporation by the creation of stockholders' rights.

2. Such official misconduct may, however, have cast upon the corporation a liability for damages in an action for deceit based on the false declarations contained in the stock certificate. But in the action on the official bond it must at least be shown that such liability exists, by allegations that the purchasers of the certificates relied upon the declarations therein and were ignorant of their falsity and free from negligence. [Whether an action could be maintained on the official bond for a breach thereof which had resulted merely in the creation of a liability, before the plaintiff corporation had actually been compelled to pay anything thereon, not determined.]

APPEAL from an order of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Affirmed.*

VOL. 111 — 1

First Avenue Land Co. vs. Parker.

The complaint alleged incorporation of the plaintiff; that on November 12, 1891, E. L. Babcock, since deceased, was duly elected secretary, and that he gave, and the defendant *George F. Parker*, as surety, executed, a bond conditioned that he should pay and account for all moneys, securities, and property coming into his hands as secretary, and well and truly perform all the duties of his office and trust as such secretary; that by the articles of association and by-laws it was the duty of the secretary to sign, with the president, all certificates of stock, and to issue and deliver the same to the several subscribers on payment of the several subscriptions, and not otherwise; that said E. L. Babcock subscribed for 500 shares of $10 each, and that one Charles Wilhelm subscribed for a like amount, thereby agreeing to pay the sum of $1,000 in cash, the time of payment of the balance not being specified; that among Babcock's duties was, as secretary, to collect and pay over to the treasurer the full amount of the cash payments due from Wilhelm and himself upon their stock subscriptions, before issuing or delivering said stock to either of them; that at the first meeting of the stockholders it was provided and agreed that the first twenty per cent. of each subscription should be paid in cash at the date of such meeting, to apply upon the purchase price of a tract of land, and that certificates of paid-up stock should be issued to each of the subscribers to the amount of their several cash payments; that said E. L. Babcock, as secretary, unlawfully combining with the president, also now deceased, caused to be issued to himself thereafter 100 shares of paid-up stock in said corporation without consideration, and without making the said cash payment of $1,000 or paying any other sum; and subsequent to such issue, he, during his lifetime, conveyed the same to Hattie E. Babcock and J. M. Babcock for value, who now claim to be the holders and owners thereof free from all equities or rights of the plaintiff; and also, in like combination, issued

First Avenue Land Co. vs. Parker.

a certificate for 100 shares of the paid-up capital stock to said Wilhelm without the payment of any consideration therefor, and without the making of any part payment, which said Wilhelm transferred for value to one William Yewdale, who has ever since held the same, and claims to be, and, as plaintiff believes, is, the *bona fide* holder thereof for full value; that thereafter said assignees of stock presented their certificates, duly assigned, which thereupon were canceled, and new certificates issued therefor by the said president and the said Babcock, as secretary, in due form, purporting on their face to be fully paid and nonassessable, and were delivered by said Babcock to said transferees, who ever since have held the same, claiming title thereto and interest in the property and assets of the plaintiff corporation, free from all infirmity or illegality; that Wilhelm has no property and is insolvent, and that Babcock died in the year 1894, leaving no estate whatever, and insolvent; that the other surety to the bond died in March, 1894; that by reason of the premises the plaintiff has suffered damages in the sum of $2,000, together with interest from the 26th day of December, 1891, for recovery of which the complaint prays.

A general demurrer to this complaint was sustained, from which action the plaintiff appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles,* and oral argument by *T. W. Spence.* They cited *Bank v. Lanier,* 11 Wall. 377; 1 Cook, Corporations, § 417; *Cincinnati, N. O. & T. P. R. Co. v. Citizens' Nat. Bank,* 43 L. R. A. 777; 2 Thompson, Corporations, § 1680; *Minor v. Mechanics' Bank,* 1 Pet. 46; *Steacy v. I. R. & Ft. S. R. Co.* 5 Dill. 348; *Foreman v. Bigelow,* 4 Cliff. 543; *Re British Farmers' P. L. C. Co. (Nichols' Case),* 26 Weekly Rep. 334; *Bridgeport Bank v. N. Y. & N. H. R. Co.* 30 Conn. 231; *Mandlebaum v. North American M. Co.* 4 Mich. 465; *Rood v. Whorton,* 67 Fed. Rep. 436; *Young v. Erie I. Co.* 65 Mich.

111, 125; *Western Bank v. Tallman*, 17 Wis. 533; *Nat. Bank v. Watertown Bank*, 105 U. S. 222; *Herdegen v. Cotzhausen*, 70 Wis. 590; *Wood v. Union G. C. B. Asso.* 63 Wis. 9.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *J. G. Flanders*.

Dodge, J.   The case presented by this complaint is a very simple one, and not in accord with the situation discussed in *First Ave. L. Co. v. Hildebrand*, 103 Wis. 530, of which we are told that this is a sequel.   As now before us, it merely appears that there were issued two certificates of stock, each for $5,000 par value, without any consideration; that is, neither for money, nor for labor or property, actually received by the corporation, equal to the par value thereof, as required by sec. 1753, Stats. 1898.   This being so, no reason is apparent upon which to escape the further provisions of the same section that " all stocks and bonds issued contrary to the provisions of this section shall be void."   Indeed, counsel for appellant concedes effective applicability of that section to the stock originally issued, but contends that, certificates of stock having been issued by the corporation asserting the ownership of stock by the parties named, upon due consideration therefor, the corporation is estopped to deny, as against one innocently purchasing such stock in reliance upon the facts so certified to be true, that the persons named did own such shares of stock.   As a result of this estoppel, he contends that the innocent purchasers have become entitled to the same rights as if the certificates were true, namely, to a share in the ownership of the corporation itself, and all other rights incident to the actual ownership of stock.   This is the damage to the corporation claimed to have resulted from Babcock's breach of his official duty.   It is, of course, obvious that, if this position is sound to its full extent, sec. 1753 is very much emasculated, for that doctrine

would give practical validity to stock which the statute declares shall be void. It would likewise give practical existence and validity to stock beyond the power of the corporation. Certificates issued and passed to innocent holders would give to them the right to hold stockholders' meetings, of which they might constitute a majority, to control the affairs of the company, and to share with the owners of actual capital in distribution of dividends or assets. A corporation limited by its charter to $100,000 of stock might thus have outstanding rights in individuals to represent twice that volume.

As already stated, appellant plants his contention on the doctrine of estoppel, and cites numerous authorities asserting applicability of that doctrine to corporations in issuing certificates of stock. The cases cited present several phases of the effect of the doctrine. Thus courts have refused affirmative relief by way of cancellation of outstanding certificates improperly issued but held in good faith and for value (*Machinists' Nat. Bank v. Field*, 126 Mass. 345; *Manhattan B. Co. v. Harned*, 27 Fed. Rep. 484; *Cincinnati, N. O. & T. P. R. Co. v. Citizens' Nat. Bank*, 56 Ohio St. 351); also by way of compelling payment of unpaid subscription or assessments where certificates falsely declared stock full paid (*Steacy v. L. R. & Ft. S. R. Co.* 5 Dill. 348, 372; *Rood v. Whorton*, 67 Fed. Rep. 434; *Re British Farmers' P. L. C. Co.* 26 Weekly Rep. 334). In other cases the false certification of stock has been held to support action for damages on the ground of fraud. *Holbrook v. N. J. Z. Co.* 57 N. Y. 616; *Shaw v. Port Philip & C. G. M. Co.* 13 Q. B. Div. 103. In one case the supreme court of Michigan held the holder of a certificate issued upon a forged transfer of valid stock entitled to the rights of a stockholder, but based its decision on a peculiarly drastic statute of that state. *Mandlebaum v. North American M. Co.* 4 Mich. 465.

We are not inclined to dispute the propositions that, when

the officers of a corporation act within the scope of their powers, the corporation acts, nor that, subject to inherent distinctions between artificial and natural persons, a corporation may be estopped by its acts as effectively as may a natural person. But neither legal rules nor legal fictions can overcome physical facts nor laws of nature. Closing the mouth of a party to deny will not create what cannot exist. The estoppel, however complete, against one who makes two conveyances of the same piece of land, cannot transpose it into two pieces; and that impossibility must be recognized by courts in the practical application of the estoppel and adjustment of rights. Hence it is not surprising that all courts, in applying to corporations estoppel to deny the assertions of their certificates, have stopped short of holding that thereby could be created capital stock which, under the law, could not have existence. Counsel for appellant concedes such limit in the case of attempted overissue of stock, recognizing that when all of the capital stock possible of existence under the law has been issued no more can come into being by any process. A corporation capable of only 1,000 shares of capital stock cannot, by estoppel, be transformed into one of 2,000. "Overissued stock, no matter how overissued, represents nothing, and is wholly and entirely valueless and void." Cook, Corporations, § 292. "Any issue of stock in excess of the amount of the capital stock as fixed by the charter is null and void. . . . His [the purchaser's] certificate is so much waste paper, and he is not a stockholder." Id. § 426. This principle that estoppel cannot create capital stock which the law does not permit to exist is conclusive, under our statute, *supra*, against appellant's contention that by the official misconduct of the secretary in issuing full-paid certificates without any payment in fact the corporation has been damaged by the creation of stockholders' rights in those who hold such certificates or reissues in place of them. No such rights have been

created, for by sec. 1753, Stats. 1898, such stock is "void.". That statute, as this court has heretofore said, was a "declaration of a public policy." *Clarke v. Lincoln L. Co.* 59 Wis. 655, 660. It asserts the legislative will that those otherwise dealing with corporations shall be protected, rather than those dealing in stock certificates. To effectuate that legislative purpose, the law must be enforced as it is written, and the prohibited issues of stock must be held void as stock, although those procuring such unlawful issues may often be held liable to pay therefor. *Jenkins v. Bradley*, 104 Wis. 540; *Shaw v. Gilbert, post*, p. 165. Attempts by the corporation to issue stock in defiance of this statute are as completely ineffective as attempts to issue in excess of the total authorized by law or charter.

It thus appearing that the corporation has not suffered the damage pointed out and principally insisted on by appellant, it remains to be considered whether any other damage to it appears with reasonable certainty from the allegations of the complaint. There is a suggestion that in some way the corporation has lost its opportunity to collect from those who subscribed for this stock by reason of the wrongful delivery of the certificates, followed by their transfer and issue of new certificates to others. No such loss is apparent. The liability of Babcock and Wilhelm upon their respective subscriptions was not thereby impaired, and there is no allegation that the solvency or collectibility of either of them diminished subsequently to the stock issue, if that fact were in any wise material. We can discover no damage in that connection resulting from the secretary's acts. There is, however, a possible injury to the corporation, which may result from the issue and transfer of the void certificates by the officers having general power and authority to issue certificates of capital stock, so that their acts, whether valid or invalid, must be deemed to be the acts of the corporation itself. The consensus of decision is well-

nigh uniform to the effect that, although such certificates cannot create stock or stockholding beyond that authorized by law, they do constitute declarations of fact of the most solemn and unambiguous character, reliance upon which in the community is to be expected; and that the corporation must respond in the only way it can to protect from loss those who innocently and without negligence act in reliance on the truth of such declarations. While the corporation, by reason of its legal limitations, cannot make good the false certificate of existence and ownership of stock, it can respond in money to reimburse any damages actually suffered by those who rely on the facts so certified. We find its liability so to do declared with great unanimity. Cook, Corp. § 293, says:

"Although it is settled law that overissued stock is void and valueless, and that no action lies either to compel the corporation to recognize the holder as a stockholder, or to issue in place thereof a valid certificate, yet where overissued certificates of stock, signed or purporting to be signed by the corporate officers having the authority to issue stock, and actually issued by such officers, are purchased by any person, or are taken in any manner in good faith and for value, such *bona fide* holder may sue the corporation in tort and recover damages."

Some of the more important cases supporting this view are the following: *New York & N. H. R. Co. v. Schuyler*, 34 N. Y. 30; *Bank of Ky. v. Schuylkill Bank*, 1 Pars. Eq. Cas. 180; *People's Bank v. Kurtz*, 99 Pa. St. 344; *Kisterbock's Appeal*, 127 Pa. St. 601; *Holbrook v. N. J. Z. Co.* 57 N. Y. 616; *Cincinnati, N. O. & T. P. R. Co. v. Citizens' Nat. Bank*, 56 Ohio St. 351; *Bridgeport Bank v. N. Y. & N. H. R. Co.* 30 Conn. 231; *Fifth Ave. Bank of New York v. Forty-Second St. & G. St. F. R. Co.* 137 N. Y. 231, 19 L. R. A. 331, note; *Moores v. Citizens' Nat. Bank*, 111 U. S. 156; *Allen v. South Boston R. Co.* 150 Mass. 200. The result of the view above stated is that by the secretary's breach of

First Avenue Land Co. vs. Parker.

his official duty there may be cast upon the corporation a liability for damages. That action is founded on the fraud accomplished by the false declarations in the certificate. To the existence of such liability, however, are necessary all the elements of the usual action for deceit. Of those elements the false representation is supplied by the certificate itself, but, in addition, it is necessary that the person making demand shall have relied thereon and shall have been ignorant of the falsity of the statements and free from any want of ordinary care and diligence. *Shaw v. Gilbert, post,* p. 165; *Moores v. Citizens' Nat. Bank,* 111 U. S. 156, 166; *Farrington v. South Boston R. Co.* 150 Mass. 406. The complaint, upon most liberal construction, fails to allege that either of the purchasers of the stock certificates wrongfully issued by Babcock was ignorant of their falsity or relied thereon. It therefore does not state facts sufficient to show even that any liability has been cast upon the plaintiff by reason of their issue. Such being the case, there is no occasion to consider the further question whether an action could be maintained upon breach of the bond in suit when such breach had merely resulted in creating a liability, and before plaintiff had actually been compelled to pay anything thereon. On that general subject see *Lyle v. McCormick H. M. Co.* 108 Wis. 81; *Farnsworth v. Boardman,* 131 Mass. 115, 122; *Kip v. Brigham,* 7 Johns. 168; *Jackson v. Port,* 17 Johns. 479. We cannot avoid the conclusion that, although the complaint sufficiently alleges official misconduct of Babcock, and, consequently, a technical breach of the bond, it fails to show that any damage has thereby been caused the company by imposing upon it either pecuniary loss or liability thereto. Hence the demurrer must be sustained.

*By the Court.*— The order appealed from is affirmed.