GRAF, Respondent, vs. NEITH CO-OPERATIVE DAIRY PROD-
UCTS ASSOCIATION, Appellant.

*November 8—December 4, 1934.*

For the appellant there was a brief by *Hougen & Brady* of Manitowoc, and oral argument by *A. L. Hougen.*

For the respondent there was a brief by *Benton, Bosser & Tuttrup,* and oral argument by *Edgar E. Becker,* all of Appleton.

NELSON, J.   The plaintiff is a farmer residing in Sheboygan county.   The defendant is a co-operative association organized under the laws of this state and principally engaged in the business of manufacturing cheese.   The defendant, hereafter called the association, was organized in 1913 and authorized to issue forty shares of capital stock, each of the par value of one dollar.   In 1924, all of its shares of stock were issued and outstanding.   At that time the plaintiff was desirous of acquiring a share of stock, and that desire was made known to the association at a meeting held on ·February 15, 1924.   A Mr. Brickbauer, who was at that time the president of the Cheese Federation and who was present at that meeting, stated that, since some of the shareholders were not selling their milk to the association, such shareholders could be considered as "out" and additional shares might be issued and sold.   Whereupon the association issued to the plaintiff one share of stock for which the plaintiff paid the sum of one dollar.   Before purchasing the share of stock the plaintiff had been a patron of the association for some time.   After purchasing the stock, the plaintiff continued to haul his milk to the factory with which the association had an agreement to manufacture cheese for its members and patrons.   Up until 1928, the association's members and patrons paid the factory that manufactured their cheese, two and one-half cents a pound.   In 1928, the association purchased the factory for $6,000.   Having no funds it borrowed $6,000 from a bank.   The note given by the association to the bank was guaranteed by thirty-two farmer patrons of the association, seventeen of whom were not shareholders.   The plaintiff was one of the guarantors.   After purchasing the factory, the association continued to charge its patrons two and a half cents a pound for making cheese.   The plaintiff continued to haul his milk to the association's factory until October 1, 1931, when he quit because of the fact that the association had decided not to sell its products to the Cheese

Federation. Shortly thereafter the association, upon consulting an attorney, discovered that it had made a mistake in issuing stock in excess of the forty shares and that the share issued to the plaintiff was void. The secretary of the association thereupon wrote to the plaintiff and advised him as to the situation and inclosed a check for one dollar payable to his order. The plaintiff refused to accept the check and returned it to the association. At the time the plaintiff ceased hauling milk to the association's factory, $4,000 had been paid on the note given to the bank, and the association had on hand about $1,500 which did not belong to its patrons. Some improvements had been made to the factory and some new equipment had been purchased. One witness testified that the factory was reasonably worth the sum of $8,000. During the time that the plaintiff supposed he was a shareholder he delivered to the association 13,113.10 pounds of milk and all of the other patrons delivered 341,807.86 pounds.

The trial court was of the opinion that the plaintiff was entitled to recover 13,113.10/341,807.86ths of $7,500, the value of the defendant's net assets.

The association contends: (1) That since the plaintiff purchased his share of stock in 1924, which concededly resulted in an overissue of stock by the association, which was absolutely void (*First Avenue Land Co. v. Parker*, 111 Wis. 1, 86 N. W. 604, 87 Am. St. Rep. 841), the plaintiff's claim for damages which accrued at the time is barred by the statute of limitations (sec. 330.19, Stats.), and (2) that the plaintiff failed to substantiate his asserted claim for money had and received.

The plaintiff contends that this action is not one to recover damages resulting from an overissue of stock by the association, but is one to recover money paid by him to the association under the mistaken belief that he was a shareholder. If the plaintiff is entitled to recover for money had and re-

ceived, his claim is not barred by the statute of limitations. So the question presented on this appeal is whether the plaintiff may recover from the defendant under the law of *quasi*-contracts; *i. e.,* money had and received.

In *Richland County Bank v. Joint School District,* 213 Wis. 178, 250 N. W. 407, 409, it was said, in speaking of the law of *quasi*-contracts, and particularly the law applicable to an action for money had and received:

"The essential elements of a *quasi*-contractual obligation upon which a recovery may be had are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain. Ever since an action for money had and received has been maintainable it has been employed as a remedy to prevent the unjust enrichment of one at the expense of another, or to prevent one from retaining a benefit conferred upon him by another which would be, under all of the circumstances of the case, unjust or inequitable."

In *Dunnebacke Co. v. Pittman, ante,* p. 305, 257 N. W. 30, it was said:

"*Quasi*-contracts 'are legal obligations rather than equitable in the sense that they originated in the courts of law and are enforced by means of so-called legal as distinguished from equitable remedies.' They rest 'solely upon the universally recognized moral obligation of one who has received a benefit, the retention of which would be unjust, to make restitution.' "

We have searched in vain for a case which holds that one may recover in an action for money had and received under circumstances similar to those here. Our failure to find such a case is not important if the plaintiff's claim can be upheld under established legal principles.

Has the association received a benefit at the expense of the plaintiff which it is unjust or inequitable for it to retain?

It appears that for some time prior to 1924 when the plaintiff purchased the stock, he was a patron of the association and as such delivered his milk to it at the factory with which

it had a manufacturing agreement; that during that period the plaintiff paid two and a half cents a pound for manufacturing cheese from his milk; that after he purchased the stock the same charge was made for such service; that a number of farmers who were patrons but not shareholders also hauled their milk to the association's factory under the same arrangement; and that the plaintiff was treated exactly the same as all other patrons of the association. While the plaintiff testified that he continued to deliver milk to the association after acquiring the stock, because of his belief that he was a shareholder, and that he might have hauled his milk to a neighboring factory that charged less for making cheese, it does not appear that it would have been to his interest to do so. He finally quit delivering milk to the association because it had decided not to sell its products to the Cheese Federation.

Although it appears that the association accumulated properties out of profits while the plaintiff was a patron, it is our opinion that the law of *quasi*-contracts is not broad enough to permit a recovery by the plaintiff on the theory that the association has been unjustly enriched, or has received a benefit at the expense of the plaintiff which it is unjust or inequitable for it to retain.

What the plaintiff seeks is recovery for loss of profits which he might have had. Establishing a loss of profit by the plaintiff does not prove unjust enrichment of the defendant. The evidence shows that the defendant exacted nothing from the plaintiff because he was a shareholder. He paid for the service rendered only what others paid for like service. The compensation so paid the defendant is entitled to retain.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.