STANDARD LITHOGRAPHING & PRINTING COMPANY v. TWIN CITY MOTOR SPEEDWAY COMPANY AND OTHERS.

BENJAMIN A. PAUST AND OTHERS, APPELLANTS.[1]

May 24, 1918.

No. 20,838.

Corporation — overissue of stock.

The findings of fact considered in connection with the conclusions of law, and *held* that the conclusions are not justified by the findings of fact.

[1]Reported in 167 N. W. 796.

In the matter of winding up the affairs of Twin City Motor Speedway Company, Benjamin A. Paust and Paul F. Cooke, creditors of defendant, filed their complaint in intervention in the district court for Ramsey county, to recover $10,069.90. Respondents Dutton and Sperry filed separate answers to the complaint in intervention. The case was tried before Olin B. Lewis, J., who made findings and ordered judgment in favor of defendant. The motion of intervening creditors for amended findings was granted in part. Their motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, interveners appealed. Reversed.

*Orr, Stark & Kidder* and *John C. Benson,* for appellants.

*Lancaster, Simpson & Purdy, L. E. Ineichen and Otis & Otis,* for respondents.

QUINN, J.

Appeal by the interveners from a judgment disallowing their claim filed in this, an action to wind up the affairs of the defendant corporation.

The defendant is a Minnesota corporation organized April 8, 1915, with an authorized capital of one million dollars, divided into ten thousand shares. The general nature of its business was to construct, maintain and operate a speedway in the vicinity of the cities of St. Paul and Minneapolis. April 26 the company issued certificates to its stockholders for its entire capital stock, of which 1,818 shares were issued to Orrin Kellogg in payment for options which he held for the purchase of certain lands near Fort Snelling, where the speedway was constructed during the summer of 1915 and arrangements made for holding races on September 4 following. Appellants had assisted Kellogg in assigning these options. In Minneapolis they had the management of the sale of tickets for the races. In turning over the proceeds therefor they retained the sum of $961.35. The races, financially speaking, were a failure. On September 18, 1915, appellants rendered to the company a statement as follows:

140 M.—16.

Commission on cost of land at 5% ........................$ 8,031.25
Extra services for one year ............................$ 3,000.00

Total Due Paust & Cooke..............................$11,031.25

Am't paid Paust & Cooke to date......................    961.35
Balance due ........................................$10,069.90

After the races it became apparent that provision for the payment of the debts of the company must be made, and accordingly a move was set on foot to have the company execute its bonds in the sum of $350,000, secured by a trust deed of its property. In order to accomplish the object the officers and a number of the creditors of the company undertook to induce the other creditors to accept such bonds in payment of their claims. December 16, 1915, at a special meeting of the stockholders, where all the stock was represented, it was unanimously voted that all outstanding stock of the company be canceled and returned to the treasury and that a certificate for one share be issued to each member. Thereupon 9,950 shares were surrendered, the certificates canceled and a record thereof entered in the books of the company. A certificate for one share was issued to each member surrendering his stock. The stock so remained until the shares here in controversy were issued to appellants.

On January 14, 1916, appellants agreed to accept $5,000 in bonds and 100 shares of capital stock of the company in settlement of their claims, and accordingly executed the following release:

1/14/16.

Upon receipt from the Twin City Motor Speedway Company of Ten Thousand Dollars ($10,000.00) in stock and of Five Thousand Dollars ($5,000.00) par value in bonds of the said Company dated November 1st, 1915, and secured by First Mortgage deed of trust to the Minneapolis Trust Company, we, Paust & Cooke, a copartnership, do hereby forever release and discharge the Twin City Motor Speedway Company, its officers and stockholders from any and all claims of any kind and description against it in favor of us or either of us for or on account of any and all contracts, verbal or written, employment, or other transaction hereto-

fore entered upon or engaged in by us or either of us or any of our agents or employees with said Company or its officers or stockholders.

(Signed) Paust & Cooke,

By Benj. A. Paust.

The bonds were delivered to appellants and on February 9, 1916, at a meeting of the stockholders, appellants being present, the company caused 100 shares of its capital stock to be issued and delivered to appellants. On that day Cooke was chosen director of the company and qualified as such. In July, 1916, a receiver was appointed and judgment of sequestration entered. In October an assessment of 100 per cent was made upon the stock. Appellants intervened and set up their claim of $10,069.90. Objections thereto were interposed setting forth the release referred to. In their reply appellants admitted the execution of the release, alleged that at the time of its execution they held a claim against the defendant for services rendered in soliciting its creditors to accept bonds in payment of their claims not included in the account stated; that they accepted in payment therefor bonds in the sum of $5,000 as referred to in the release; that the stock issued to appellants was in payment of the account stated and that the same was an over-issue and therefore void and of no value.

Appellants' contention is, that the full amount of the authorized capital stock of the company was issued to its several members in April, 1915, that the same was outstanding on February 9, 1916, and therefore the stock issued to them on that day constituted an over-issue, and that the same was void and of no value, while the respondents contend that the surrender of 9,950 shares of its stock and the cancelation of the certificates by a unanimous vote of the stockholders on December 16, and an entry thereof made in its records, to enable it to better dispose of its bonds, had the effect of restoring that number of shares to the company, and thereupon the same became a part of the treasury stock of the company, and that the issue of 50 shares thereof to each of the appellants was valid and binding between the parties. Upon these issues the court found that the stock issued to the appellants was an over-issue and voidable.

The trial court further found that the stock so issued to interveners

was not treasury stock; that interveners subscribed for the same with full knowledge of all the financial circumstances of the company and accepted and retained the same with full knowledge of all the surrounding facts and conditions under which such stock was issued; that until the trial in June, 1917, they made no attempt to rescind or repudiate said transaction, though in October, 1916, they filed objections to the making of an assessment against them as stockholders; that no attempt was made by them to rescind the transaction until long after a receiver had been appointed and the rights of creditors had intervened; that such delay was unreasonable and prejudicial to the rights of the creditors and constituted laches on the part of the interveners, and a ratification of the sale of the stock to them. That, as a conclusion, the interveners were guilty of such laches in the premises as to bar their right to rescind the sale and transfer of stock to them and to bar any claim in their behalf for services arising out of the alleged failure of consideration, and ordered judgment in favor of the defendant.

The turning point in the case is whether the conclusions of law found by the trial court are sustained by the findings of fact. The question must be answered in the negative. The court expressly found as a fact that the stock issued by the corporation in settlement of the claim of interveners was an over-issue and necessarily unauthorized. Such an issue of stock is utterly void and certificates thereof are wholly invalid. Cook, Corporations (7th ed.) § 292; Thompson, Corporations (2d ed.) § 3545. Claimants therefore received nothing in payment of their claim. We discover no basis for an application of the doctrine of estoppel from the facts found by the trial court which we have recited, and the conclusion that claimants are by their conduct precluded from insisting upon the invalidity of the stock was error. First Avenue Land Co. v. Parker, 111 Wis. 1, 86 N. W. 604, 87 Am. St. 841. Neither can we go into the record for the purpose of discovering evidence claimed by respondents to support their contention that the stock was not an over-issue, for we can neither make nor amend the findings of the trial court. The evidence does not conclusively sustain respondents' contention in that respect, and, since the conclusions of law are not supported by the facts as found by the trial court, there must be a reversal. We do not

think, however, that claimants are entitled to judgment on their claim. There should be a new trial upon all the issues in the case. It is so ordered.

Reversed.