STANDARD LITHOGRAPHING COMPANY v. TWIN CITY MOTOR SPEEDWAY COMPANY.

PAUST AND COOKE, INTERVENERS-CLAIMANTS.

PHILIP W. HERZOG, RECEIVER OF DEFENDANT, AND ANOTHER, APPELLANTS.[1]

January 23, 1920.

No. 21,448.

**Corporation — issue of stock to creditors valid payment of their claim.**

1. The holders of the Speedway company stock, all of the stock having been issued, surrendered their stock and it was canceled. It was contemplated that the stock would be reissued to the parties in interest as their interests should be determined to be, and it was further contem-

[1] Reported in 176 N. W 347.

plated that it might be necessary to use some of the stock in caring for the corporate indebtedness. Certain stock was issued to the claimants in payment of their claim against the corporation and they gave a release. They claim that the stock was an over-issue and not a payment and the trial court so found. It is *held*, upon the facts stated in the opinion, that the stock was not an over-issue; that it was valid stock; that the doctrine that a surrender such as was made was invalid as to creditors has no bearing upon the controversy as to an over-issue, and that the acceptance of the stock by the claimants was a payment of their claim.

**Former appeal not law of the case on point of over-issue of stock.**

2. On the former appeal there was a reversal. The trial court found that there was an over-issue, but it held that the claimants were estopped to assert it. The claimants appealed. The point of the reversal was the holding on the question of estoppel. The opinion stated that it did not conclusively appear that there was not an over-issue and it directed a new trial upon all the issues. The present appellants were respondents upon the former appeal. It is *held* that the doctrine of the law of the case does not preclude them from attacking the sufficiency of the evidence to sustain the finding of an over-issue.

After the former appeal reported in 140 Minn. 240, 167 N. W. 796, the case was tried before Dickson, J., who made findings and as conclusions of law found that Paust and Cooke were entitled to judgment; that they had a valid claim against the Twin City Speedway Company for $9,994.05, and that the same be paid by the receiver of the company out of funds in his hands for the payment of debts. From an order denying their motion for an order amending the findings of fact and conclusions of law or for a new trial, Philip W. Herzog, receiver, and Frank H. Wheeler, objecting stockholder, appealed. Reversed.

*Milton D. Purdy* and *Bishop H. Schriber,* for appellants.

*Orr, Stark & Kidder* and *John C. Benson,* for respondents.

DIBELL, J.

This is a sequestration proceeding against the Twin City Motor Speedway Company, a Minnesota corporation. The controversy now before the court is upon the claim of Paust and Cooke for $9,994.05 on an account stated. It was here before and is reported in 140 Minn. 240, 167 N. W. 796. So far as is possible we avoid a repetition of the facts.

In January, 1916, Paust and Cooke received $10,000 in stock of the company and $5,000 of its bonds and gave a release.  It is not questioned that they accepted the stock and bonds in settlement of all their claims, including the account stated.  Their contention is that the stock was an over-issue and void, that it was applied in payment of the account stated, and that the bonds were given in payment of services rendered subsequent to the stating of the account.  The court found that the parties stated an account as claimed; that the $10,000 in stock was given in payment of the account stated and the $5,000 of bonds in payment of subsequent services; that the stock was an over-issue and therefore not a valid payment; and it directed judgment for the amount of the account stated.  The receiver of the company and Frank H. Wheeler, a stockholder, appeal from the order denying their motion for a new trial.

The question of the validity of the stock in consideration of which Paust and Cooke released their claim is the fundamental one.  The conclusion which we have reached upon it makes it unnecessary to determine the question whether there was an account stated such as is claimed, and we pass the question with the suggestion that it would be difficult to sustain the finding that an account was stated.  We have then these two questions:

(1) Was the stock issued to Paust and Cooke an over-issue, or was it valid stock and by consequence the transfer of it an effectual discharge of their claim on an account stated?

(2) Is the opinion on the former appeal the law of the case so that the appellants are concluded upon the question of the over-issue?

The two questions we consider in the order of their statement.

1. The Speedway company was incorporated in the early part of 1915.  On September 4, 1915, it held its first races on its tracks at Fort Snelling.  They were disastrously unsuccessful.  Those interested then began giving serious thought to the payment of the large indebtedness of the company.  It was conceived that an issue of bonds secured by a trust deed might afford a feasible method of liquidating the company's debts, and those interested set about getting the creditors to accept bonds for their claims.  Paust and Cooke rendered services in that behalf.

The capital stock of the company was one million dollars, and it was issued about the time of the incorporation.  It does not seem that it rep-

resented money actually paid into the treasury, nor the value of property transferred to the company, nor definite services rendered, though it may be assumed that some 50 shares were issued upon a definite consideration. Some of the stockholders had procured options which went to the company. Some had advanced or loaned money. It was intended that all the authorized capital stock should be distributed, leaving none in the treasury. The distribution, if not tentative, and there is much to indicate that it was only tentative, was upon a basis which does not appear.

On December 16, 1915, apparently in view of the contemplated settlement of the company's debts, it was voted at a meeting of the stockholders that all of the stock be surrendered and canceled. All except the 50 shares and perhaps a few others were surrendered and canceled, and the certificates were returned and attached to the stubs in the stock book. A certificate of one share was then issued to each member surrendering his stock, some seven in all. No more stock was issued until February 9, 1916.

Negotiations for the settlement of the company's debts through a bond issue proceeded satisfactorily. On January 14, 1916, at a meeting of the creditors and stockholders, an agreement was made, whereby the greater portion of the creditors agreed to accept bonds, and the issuance of bonds in the amount of $350,000 secured by a trust deed was authorized, and afterwards the deed was executed and the bonds were issued. At this meeting Paust and Cooke agreed to take $10,000 in stock and $5,000 of bonds in payment of their account stated and their subsequent services in inducing creditors to take bonds in lieu of cash. On February 9, 1916, $10,000 in stock was delivered to Paust and Cooke and they accepted it along with their bonds and their claims against the company were satisfied. Paust soon after was elected a director.

The resolution of December 16, 1915, for the cancelation and surrender of the stock intended clearly enough that the stock surrendered would be reissued to the parties in interest as their interests should later be determined, but it was further in contemplation that the stock or some of it might be used in some way to care for the debts of the company which it was then in mind to discharge. The resolution recited that some of the corporate stock "may necessarily have to be sold, pledged or

otherwise used in order to raise funds to make a settlement with the creditors." There was nothing in .the resolution which prevented the direct application of the stock by appropriate corporate action to the payment of the corporate debts. The agreement by which Paust and Cooke got their bonds gave them the stock, and this is so though the bonds were applied to one claim and the stock to the other. That the stock and the bonds came to them through a corporate act cannot be successfully questioned. There was ample stock which might be issued. The large stockholders were present or represented at the meeting and were bound by the arrangement made. After the stock was issued to Paust and Cooke, the total of the issued stock was only a fraction of the corporation's capital. From the beginning their title was secure. The company never denied their title and. no stockholder denied it. The proceedings of the corporation were irregular and indefinite, but Paust and Cooke got valid stock, and that is the controlling fact.

It is argued by counsel for claimants that the stockholders cannot successfully assert a valid surrender and cancelation of their stock such as was made in December, 1915, as against creditors, and that Paust and Cooke were creditors. This may readily be conceded, but, instead of continuing to be creditors, Paust and Cooke took stock and ceased to be creditors and became stockholders. They cannot get back into the creditor class, except by successfully maintaining that the stock issued to them was an over-issue and that is the object of this action. The claim which they make assumes that they have won this action and it takes them nowhere. Except as against creditors a cancelation and surrender and redistribution of the stock was not invalid, and as against creditors it was invalid. only so far as the liability of stockholders was involved. The principle invoked is without application to the controversy before us. As before said the controlling fact is that Paust and Cooke got valid stock.

We hold that the surrender and cancelation of the stock in accordance with the resolution of December 16, 1915, was valid; that the stock issued to Paust and Cooke was not an over-issue; that it was a consideration for the discharge of their claim on the account stated, and that they are bound by the release which they executed.

2. On the former appeal the one point of the reversal was the error in holding that Paust and Cooke, by their conduct subsequent to the issu-

ance of the stock, estopped themselves to assert that it was an over-issue. The claimants now contend that the proper application of the so-called doctrine of the law of the case determines on this appeal that there was sufficient evidence of an over-issue so that a finding of the trial court on the second trial and on similar evidence must be sustained.

It is the settled rule of this court that its decision will not be reviewed in the same case except by way of reargument, and therefore that a determination once made upon an issue in the case will not be reviewed upon a subsequent appeal. 1 Dunnell, Minn. Dig. § 398, and cases cited. The rule stated in the absence of statute is one of practice and does not express a limitation of power. Messenger v. Anderson, 225 U. S. 436, 32 Sup. Ct. 739, 56 L. ed. 1152. It applies to questions decided but not to questions which are raised and not determined, and questions not decided may be considered on a second appeal. Kramer v. N. W. Ele. Co. 97 Minn. 44, 106 N. W. 86. The questions whether there was an account stated and whether there was an over-issue of stock were argued in the briefs. About the first nothing was said. After holding that the respondents, appellants here, could not sustain their order upon their claim of estoppel, on which alone they prevailed in the trial court, we said [140 Minn. 244] :

"Neither can we go into the record for the purpose of discovering evidence claimed by respondents to support their contention that the stock was not an over-issue, for we can neither make nor amend the findings of the trial court. The evidence does not conclusively sustain respondents' contention in that respect, and, since the conclusions of law are not supported by the facts as found by the trial court, there must be a reversal. We do not think, however, that claimants are entitled to judgment on their claim. There should be a new trial upon all the issues in the case."

We did not intend that if the case should be retried, and a finding of an over-issue should be made on similar evidence, the finding would not be subject to review. What was said as to the over-issue was incidental to the question of estoppel to which our attention was directed as the point of decision, and we made no determination foreclosing a review. There was no thought of settling the law of the case. It may be noted that on the former appeal Paust and Cooke were the appellants and the findings

on the two questions of account stated and over-issue were in their favor. The present appellants, the receiver and Wheeler, were the respondents on that appeal, and to sustain the holding of the trial court, which they failed in doing, it was for them to maintain the validity of the estoppel found by the trial court. Not until the present appeal have the receiver and Wheeler been in a position directly to assign error in the finding on the question of an over-issue. If they sought again to raise the question of estoppel on the same evidence they would be concluded, or if upon a presentation of either of the two questions just mentioned, upon the first trial, we had definitely determined that the evidence was sufficient to sustain them, it may be assumed that they would not now be in position, although for the first time appellants, to assail like findings made upon like evidence. The case, for reasons stated, is not such. The receiver and stockholders are not concluded by the former opinion from attacking the sufficiency of the evidence to sustain the finding of an over-issue, nor is the court precluded from inquiring into it.

Order reversed.

HALLAM, J. (dissenting).

On the former trial the court found that the issue of stock to Paust and Cooke was an over-issue, but that they were estopped to show that fact.

On the former appeal Paust and Cooke, as appellants, contended that the finding of the court that the stock was an over-issue was sustained by the evidence, and that the finding that they were estopped was not sustained.

The respondents there, appellants here, contended that there was no evidence to sustain the finding that there was an over-issue of stock, but if there was then that the finding of estoppel should be sustained.

Both parties briefed both questions fully. This court considered both questions, and decided that there was no estoppel and that the evidence did not conclusively show that there was not an over-issue and ordered a new trial. The evidence as to over-issue is the same now as it was then. It seems to me the question was before the court and that if we had been of the opinion that there was no evidence of over-issue we should have said so and ended the case, and the opinion on the former

appeal indicates that we would have done so.  It seems to me the deci-
sion of the former appeal determined that the question of over-issue was
a question of fact.

HOLT, J. (dissenting).
I concur in Justice Hallam's dissent.