## C. D. MACLAREN AND ANOTHER v. SIGVARD WOLD.[1]

July 16, 1926.

No. 25,240.

**Stockholder liable to par of his stock for unpaid debts of corporation up to charter limit.**

1. A stockholder is not relieved of his constitutional double liability because the assets of the corporation exceed the charter limit of indebtedness. If there remain debts after the application of corporate assets to their payment the stockholders are liable to the par of their stock for the debts unpaid up to the charter limit.

**Stockholder not relieved of liability because creditors ran business at a loss.**

2. The defendant was not relieved of his double liability because the property of the corporation was by arrangement between the corporation and the creditors taken into possession by a so-called committee of creditors, and the business continued at a loss.

**As article fixing amount of capital stock was successively amended debt limit increased.**

3. Article 5 of the articles fixed the capital stock at $30,000. Article 7 fixed the debt limit at an amount not exceeding the capital stock. Article 5 was amended so as to increase the stock to $100,000 and later to $400,000. Article 7 was never amended. It is *held* that the limit of indebtedness increased with the increase of stock.

[1]Reported in 210 N. W. 29.

**Having received benefits from stock of later issues purchased by him, defendant is liable as stockholder.**

4. There were irregularities in the increase of stock, but it was not beyond the power conferred by statute upon the corporation. The defendant bought stock issued on the increase, and received benefits accruing therefrom. It is *held* that he is liable thereon as a stockholder.

Corporations, 14 C. J. p. 978 n. 63 New; p. 1009 n. 14 New; p. 1098 n. 12 New; 14a C. J. p. 576 n. 87 New.

Action in the district court for Goodhue county by plaintiffs as receivers of Goodhue Co-operative Company to recover an assessment on five shares of stock. The case was tried before Johnson, J., who made findings in favor of defendant. Plaintiffs appealed from an order denying their motion for a new trial. Reversed.

*Thomas Mohn* and *Todd, Fosnes & Sterling* and *R. H. de Lambert,* for appellants.

*A. J. Rockne, Albert Mohn, Hall & Sargent* and *F. M. Wilson,* for respondent.

DIBELL, J.

Action by the plaintiffs as receivers of the Goodhue County Co-operative Company to recover an assessment on 5 shares of stock of which the defendant is alleged to be the owner. There were findings for the defendant and the plaintiffs appeal from the order denying their motion for a new trial. The propriety of the assessment of stock in the company was considered in Farwell, O. K. & Co. v. Goodhue County Co-op. Co. 160 Minn. 64, 199 N. W. 436.

The co-operative company was incorporated in 1907 with an authorized capital of $30,000. On November 20, 1909, defendant bought 1 share. It is claimed by the plaintiffs that the stock was increased first to $50,000, then to $100,000, and later to $400,000. The defendant bought 1 share after the increase to $100,000, and 3 after the increase to $400,000.

The defendant claims that he is not liable upon any of the stock. One of his defenses is that the charter limitation of liability is $30,000, and that the corporation has assets in excess of that amount.

The other is that in 1922 the property of the company was put in the possession of a so-called committee of the creditors and under their management great loss was incurred. If these claims fail his contention is that there is no liability upon the 4 shares purchased after the increase of stock because the increase was without corporate authority, and that it was an over-issue and ultra vires.

The plaintiffs claim that the stockholders are liable to the $30,000 limit of indebtedness fixed by the original articles, though the assets exceed that amount; that when the stock was increased the charter limit of indebtedness increased with it; and that the increase of stock was substantially regular; that the defendant participated in the benefits of the stock ownership, and that he is liable to creditors on his constitutional double liability.

1. It is not a defense to the constitutional double liability that there were assets of the corporation, applicable to the payment of its debts, in excess of the amount of the charter limit. So long as there are debts unpaid from the corporate assets the stockholders are liable up to the par of their stock until such debts are paid though not to an amount exceeding the charter debt limit. This is the effect of State v. Mortgage Security Co. 154 Minn. 453, 192 N. W. 348, and In re Owatonna Co-op. Merc. Co. 157 Minn. 482, 196 N. W. 654. This is not important in this case, in view of our conclusion as to the limit of indebtedness and the amount of stock liable as stated in paragraphs 3 and 4. But the question has been argued at length and all misunderstanding should be ended.

2. In July, 1922, the property of the company was put in the possession of a so-called committee of the creditors under a voluntary arrangement between the creditors and the corporation which was in great financial stress. The arrangement was not an unusual one and the purpose was to save the creditors and the corporation. It is found by the trial court that the administration by the committee was ineffective and that loss resulted. The claim of the defendant is that because of the doings of the committee the receiver, appointed a year later, cannot assert liability against the stockholders. The case of Hodde v. Hahn, 283 Mo. 320, 222 S. W. 799, is to the con-

trary. We see no plausible ground for relieving the stockholders because of the failure of the committee to realize on the assets.

3. The capital stock of the company was fixed by section 1 of article 5 at $30,000. Article 7 provided:

"The highest amount of indebtedness or liability to which this corporation shall at any time be subject shall not exceed the amount of the authorized capital stock of the company."

The statute limited the capital stock to $100,000. G. S. 1923, § 7826. We construe "authorized capital stock," as used in article 7, to mean the stock authorized by the articles, that is, $30,000, and not $100,000, the amount of capital stock which under the statute might be issued. The plaintiffs claim that when the stock was increased to $400,000 by the amendment of article 5 the effect was to increase the charter limit of indebtedness to $400,000 because of the language of article 7.

We think this view the correct one. The articles are in the nature of a contract between the creditors and stockholders as to the extent of the double liability of the stockholders. They must be construed as a whole. When the corporation was organized with its small capital the authorized capital and the limit of indebtedness were made equal. The amendment substituted a section which fixed the stock at $100,000, and later at $400,000. Section 7 continued to provide that the limit of indebtedness should not exceed the authorized capital. When the stockholders by amendment put $400,000 in article 5 as the amount of the stock and left article 7 as it was, the articles must be understood as making the limit of indebtedness the amount of the stock authorized by the articles. Some strength is given to this view by State v. Duluth St. Ry. Co. 150 Minn. 364, 185 N. W. 388, and cases cited. In adopting this view we do not fail to note that the tendency is away from imposing a double liability on stockholders, except in the case of banks, and that Minnesota is almost alone in its constitutional provision. See 7 Minn. L. Rev. 79. The double liability provision of the statute provokes litigation, is necessarily expensive and often fruitless, and drives those wishing to do business in Minnesota under a corporate organization

to other states, not to do business there but to get a corporate organization, with attendant inconvenience to them and to the public. We should not adopt a construction unduly favorable to the double liability. But we see only one reasonable interpretation of the debt limit provision and that the one stated.

4. The corporation was organized as a co-operative company in 1907 under a statute now embodied in G. S. 1923, § 7822, et seq. Under this statute it could "amend its certificate of incorporation at any general stockholders' meeting, or at any special meeting called for that purpose" and increase or diminish its stock at "a stockholders' meeting specially called for that purpose." G. S. 1923, §§ 7825-7826.

The proceedings of the corporation are irregular and its records defective. They seem to show that in 1909, either at a regular or special meeting, action was taken looking to an increase of the stock to $50,000. We do not know what came of it. In 1913, at a special meeting of the stockholders, it was voted "that we capitalize for one hundred thousand dollars." What further was done does not appear. On October 21, 1916, a certificate was recorded in the office of the register of deeds of Goodhue county showing an amendment of the articles at a special meeting called for the purpose of increasing the capital stock to $100,000 and held on October 16, 1916. Leaving these crude proceedings we go to the more important and perhaps controlling proceedings in 1919.

By chapter 382, p. 401, L. 1919, G. S. 1923, §§ 7834-7859, provision was made for the incorporation of co-operative associations.

Section 11 provided:

"Any co-operative corporation or association heretofore organized and doing business under prior statutes * * * may come under the provisions of this act and be bound thereby upon filing with the proper official a copy of the resolution authorizing such action adopted by the stockholders of such corporation or association in the manner provided for the adoption of amendments."

Section 12 provided:

"The articles of incorporation of any association organized under this act or which may elect to come under the provisions of this act may be amended  *  *  *  so as to increase or diminish its capital stock  *  *  *  in the following manner: The board of directors, by majority vote of its members, may pass a resolution setting forth the full text of the proposed amendment and also the full text of such section or sections as may be repealed by such amendment. Upon such action by the board of directors, notice shall be mailed to each and every stockholder containing a copy of the resolution so adopted, the full text of the proposed amendment, and also the full text of such section or sections as may be repealed by such amendment. Such notice shall also designate the time and place of the meeting at which such proposed amendment shall be considered and voted upon, in the same manner as elsewhere provided in this act. If a quorum of the stockholders is registered as being present or represented by mail vote at such meeting, a majority of the members so present or represented by mail vote may adopt or reject such proposed amendment."

Section 5 provided:

"Except in cases where this act requires a majority vote of all stockholders, the number of stockholders required to be present in person or represented by mail vote at any regular or special stockholders' meeting to constitute a quorum for the transaction of business shall be a majority of such stockholders when the total number does not exceed one hundred (100), and at least ten per cent (10%) of the total number of stockholders in all other cases, which shall not be less than fifty (50); but four hundred (400) stockholders present in person shall constitute a quorum in any association."

We construe the provision relative to the amendment of the articles increasing the stock as referring to the method prescribed in section 12 and not the method provided by the general law under which the corporation was organized. G. S. 1923, § 7826. We do

not agree with counsel for the defendant that G. S. 1923, § 7472, applies.

On December 5, 1919, the board of directors passed a resolution that the company come under the provisions of chapter 382, and that the charter be amended so as to increase the capital stock to $400,000, and both resolutions were submitted to a special meeting of the stockholders held on December 16, 1919. There were more than the necessary ten (10) per cent of the stockholders present and the vote was unanimous to come within the new act.

The claim is made that the resolution to amend the articles so as to increase the capital stock to $400,000 could not be adopted at the same meeting as the resolution to come under the provisions of the act; that is, that the corporation must bring itself under the act before it could amend in accordance with its provisions, and both results could not be accomplished at the same stockholders' meeting. A cautious regard for the language of sections 11 and 12 would suggest that the resolution to come under the new law be adopted first, and an amendment at a later meeting; but we are of the view that it was not more than an irregularity to consider and determine both at one meeting. If we are right in this and in our view that section 11 permits an amendment by the method prescribed in section 12, we are well out of difficulty.

The increase of stock was not an overissue within Standard L. & P. Co. v. Twin City M. S. Co. 140 Minn. 240, 167 N. W. 796; Id. 145 Minn. 5, 176 N. W. 347. There was a consideration for the new stock. Nor was it ultra vires within the proper sense. The corporation originally had statutory power to issue to the limit of $100,000. Under the 1919 act there was no limit. That the corporation was not without power to increase its stock is illustrated by Scovill v. Thayer, 105 U. S. 143, 26 L. ed. 968, which may be taken as typical of many others. There the charter provided for capital stock to the amount of $100,000. The statute provided that the corporation might increase its stock to double the amount fixed by its charter. It increased first to $200,000 and later to $400,000. The increase to $200,000 was sustained, but beyond that was held

invalid. In other words, the corporation had power to increase to $200,000, but beyond that there was no power. Of course the corporation cannot bind stockholders to liability through the issue of shares which it has no power to issue. Here there was no lack of power. The statute when the company was organized authorized a capital stock of $100,000 and no more. The law of 1919 authorized an increase of stock and made no limit. We sustain the increase to $100,000 and the increase to $400,000. The increase to $100,000, though there were irregularities, and though the proceedings were crude, was treated by all as a valid issue. The defendant bought a share of this issue in 1917 and the corporation's assets were increased by the amount he paid. If we have construed sections 11 and 12 correctly there were no invalidating irregularities in the issue of the $400,000 in 1919. It would be impossible to work out the rights of the parties if stock issued and held for years were held to confer no rights and impose no liabilities. It is the more easy to hold as we do since the defendant concededly bought the stock, first 1 share, then another, then 3 more. He participated in the dividends, and whatever other advantage was had from stock ownership, for instance, dividends on his purchases of merchandise. He never repudiated. If great profit had come he would have participated in it rightfully.

Order reversed.

Motion for reargument was granted on November 23, 1926, and is now pending. [Reporter]