NORMAN P. ROOD, Trustee, Appellant, v. CROCUS HILL MINING COMPANY et al., Respondents.

Springfield Court of Appeals, July 20, 1911.

1. CORPORATIONS: Actions Against Stockholders: Remedies of Creditor of Corporation.  The creditor of a corporation, who seeks to reach unpaid subscriptions to stock to satisfy his debt, may avail himself of any of the following concurrent remedies: (1) he may bring an action in equity; (2) he may proceed under the statute by motion and execution against the owner of the stock, under section 3004, Revised Statutes 1909; (3) he may bring an action at law under section 3006, Revised Statutes 1909.  The creditor should be guided by the facts in the case in determining which remedy he will pursue.

2. ———: ———: **Law Action.** An action under section 3006, Revised Statutes 1909, providing for bringing suit against stockholders for the unpaid debts of a dissolved corporation is an action at law.

3. ———: ———: **Equity Action: Appellate Practice.** An action under section 3004, Revised Statutes 1909, providing for issuing execution against stockholders upon an unsatisfied judgment against a corporation upon motion in open court to reach the unpaid subscription on stock, is a substitute for an action in equity and accomplishes the same end, and it is the duty of the appellate court to review the testimony and dispose of the case in the same way as if it were an action in equity.

4. ———: ———: ———: **Unpaid Subscription on Stock: Sufficiency of Evidence.** In an action under section 3004, Revised Statutes 1909, where the plaintiff by motion asks for execution against stockholders on account of unpaid subscriptions to the stock of a corporation, against which plaintiff had obtained judgment, the evidence is examined and held to show that the stockholders had not paid full value for the stock issued to them, and that plaintiff was entitled to an order awarding execution against them.

5. ———: ———: ———: ———: **Stockholders Also Judgment Creditors.** Where a trustee, for the benefit of all the creditors of a corporation, has obtained judgment against the corporation and seeks to satisfy that judgment by obtaining execution against the stockholders of the corporation for their unpaid subscription under section 3004, Revised Statutes, 1909, and it appears that these stockholders were among the creditors in whose favor the judgment had been originally obtained, and an execution was awarded against them because of their unpaid subscription, *held*, that they were entitled to have the judgment credited to the extent of their interest as creditors in said judgment.

6. **APPEAL AND ERROR: Trying Equity Case as Law Case: Directing Judgment to be Entered.** Where both parties in the lower court try an equity case, as if it were a law case, and the appellate court finds that the judgment on its view of the evidence was for the wrong party, ordinarily the cause will be remanded for a new trial, but where, as in this case, the plaintiff was compelled to rely upon the defendants and their employee to make out his case, and these parties all testified fully at the trial and it did not appear that any one else knew the facts, and there was nothing to indicate that anything new could be developed if a new trial were granted, the appellate court would be justified, upon reversing the judgment, to direct the trial court the kind of judgment to enter.

Appeal from Jasper Circuit Court.—*Hon. Henry L. Bright,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. W. McAntire* for appellant.

(1) The property only cost $40,000 and according to the sworn testimony of the two defendants, the property was turned for the whole of the capital stock of the corporation and the capital stock of the corporation was $100,000. From the testimony, I think that the court could have found that they paid no money whatever for their shares of stock and that they were liable for the total amount of the $5000 if held by them in the corporation. Van Cleve v. Berkeley, 143 Mo. 109; Stone Cutter Co. v. Scott, 157 Mo. 527; Banking Co. v. Mfg. Co., 168 Mo. 643. (2) If there was any bona fide indebtedness of the corporation to defendants the whole of the same had been placed in the hands of N. P. Rood, trustee and he had obtained a judgment against the corporation for that amount and even though the defendants had anything due them from the corporation, they could have shown that only for the purpose of off-setting what the corporation owed them against their liability to the corporation. Jerman v. Benton, 79 Mo. 148; Stinebaker v. Restaurant Co., 133 Mo. App. 250; Austin Powder Co. v. Lead Co., 134 Mo. App. 183. (3) The peremptory declaration of laws given by the court in favor of defendants, should not have been given for the reason that the evidence was such as to admit of this conclusion or inference and upon which reasonable minds might differ. Williams v. Transit Co., 202 Mo. 345; Neily v. Railroad, 215 Mo. 567. (4) The books of the company, the stock book, the minute book, the ledger and the day book, would have certainly shown just how much money came into the hands of the corporation and from whom it came and it would be the best and strongest evidence as to the facts in issue in this case.

These books were within the possesion or control of these two defendants and their unexplained failure to produce them, warrants the inference that they would have been unfavorable to the defendant. Murren v. Ward, 15 Com. 377; Chaffes v. U. S., 18 Wall (U. S.) 516; Carpier v. Lumber Co., 138 Ill. 533; State v. New Orleans Water Works Co., 107 L. A. 1; U. S. v. Fleming, 18 Fed. 907; Wallace v. Berger, 14 Iowa, 183; Page v. Stevens, 23 Mich. 357; Mentonia v. Riley, 184 Ill. 183; Delvan v. Wells, 56 N. J. L. 213, 47 Atl. 467.

*McIndoe & Thurman* for respondents.

COX, J.—This is a proceeding by the plaintiff as a judgment creditor of the defendant, Crocus Hill Mining Co., by separate motions under the statute, asking for execution against defendants, Bendelari and Cook, for unpaid subscription to the stock of the Crocus Hill Mining Company. Trial was had and the issues found for defendants and plaintiff has appealed.

The facts which afterward led to the procurement of the judgment which appellant is seeking to collect were as follows:

The Crocus Hill Mining Company was indebted to a number of parties including these defendants, Bendelari and Cook, and executed a deed of trust with plaintiff as trustee upon all its property to secure these creditors. In this deed of trust each creditor is named and the amount due each specified. The total debts secured amounted to $5814.49 of which the amount stated to be due these defendants is $425. Afterwards the deed of trust was foreclosed and the proceeds of the sale applied pro rata upon these debts. The plaintiff, trustee in the deed of trust, and representing all the creditors named therein brought suit against the corporation for the balance due on these debts, and secured judgment for $3499.89, and it is upon this judgment that he now seeks execution against these parties. It will thus be seen that about forty per cent of the debts were paid from the pro-

ceeds of the sale under the deed of trust. Upon this basis the amount due Bendolari and Cook at the time the judgment was rendered against the corporation in plaintiffs favor was $255 and they are now interested in the judgment to that extent.

The important question to be determined upon this appeal is whether the finding of the trial court is for the right party.

Counsel for the respondents insist that this is not an equitable proceeding, but one at law, and that therefore the finding of the trial court is binding upon us and the judgment should be affirmed. To support this contention we are cited to Colonial Trust Company v. McMillan, 188 Mo. 547, 87 S. W. 933 and other cases. These cases were brought under what is now section 3006, Revised Statutes 1909. Actions under that section are law actions as held by the cases to which we have been referred, but as the present case is a proceeding under another section of the statute, the cases cited are not in point in this case.

The creditor of a corporation who seeks to reach unpaid subscription to stock to satisfy his debt may bring an action in equity or proceed under the statute by motion for execution against the owner of the stock, as was done in this case; or he may bring an action at law under secion 3006. These are concurrent remedies, and the creditor should be guided by the facts in the case in determining which remedy he will pursue. [Shields v. Hobart, 172 Mo. 491, 72 S. W. 669; Steam Stone Cutter Company v. Scott, 157 Mo. 520, 57 S. W. 1076.

The Supreme Court of this state has held in the case of Erskine v. Lowenstein, 82 Mo. 301, that this statutory proceeding by motion for execution is a substitute for an action in equity to accomplish the same end. By this decision of the Supreme Court we are bound, hence, it becomes our duty to review the testimony and dispose of the case in the same way as if it were an action in equity. The Saint Louis Court of Appeals has in a very

recent case recognized the same rule upon the same authority. [Bonet Construction Company v. Central Amusement Company, 132 S. W. 270.]

In equity cases it is settled law in this state that while an appellate court will defer somewhat to the finding of the chancellor, it will not be bound thereby, but if satisfied that the result reached by the chancellor is wrong, will review the testimony and render such judgment as the facts warrant. [Benne v. Schnecko, 100 Mo. 250, 13 S. W. 82; McElroy v. Maxwell, 101 Mo. 294, 14 S. W. 1; Patterson v. Patterson, 200 Mo. 335, 98 S. W. 613.] Following this rule we shall examine the testimony and determine for ourselves whether or not the finding of the trial court was for the right party.

The evidence produced upon the hearing of the motion for execution disclosed the following state of facts. The State Lead and Zinc Company was the owner of a mine in Jasper county. The defendants, Bendelari and Cook, were partners and conceived the idea of organizing a corporation for the purpose of buying and operating the mine owned by the State Lead and Zinc Co. To accomplish this purpose they took in another partner by the name of White who was a resident of St. Paul, Minnesota, and these three consituted a partnership known as the Bob White Mining Company. The sole purpose of the formation of this partnership seems to have been to organize and start a new corporation for the purpose of buying and operating the mine in question. To accomplish this purpose Cook went to St. Paul and he and White induced parties there to invest in this mining venture and to put up money to them for that purpose for which they were to receive stock in the new corporation when it was organized. On May 10, 1907, the Bob White Mining Company opened an account with the Miners Bank, and from that date until June 10th, when the account closed, made deposits totaling $36,500, and drew checks for the entire amount. The corporation was organized on May 16, 1907, and named the Crocus Hill

Mining Company. It was capitalized for $100,000, consisting of 1000 shares of the par value of $100 each. The parties signing the articles of association were the defendants, A. E. Bendelari and Frederick Cook, and A. W. Thurman, B. L. Geddes and S. Wax. The articles of association recited that the board of directors should consist of five members, and that the first board were the members above named. It also stated that the entire stock of the corporation had been bona fide subscribed and had been duly paid, and was then in the custody of the board of directors, or managers. That the subscribers to the stock were as follows: A. E. Bendelari, 50 shares; Frederick Cook, 50 shares; A. W. Thurman 1 share; B. L. Geddes 1 share, and S. Wax 898 shares. The evidence showed that the mine was bought from the State Lead and Zinc Co., and that $40,000 was paid therefor. The transfer was made from the State Lead and Zinc Co., direct to the new corporation, the Crocus Hill Mining Company. The evidence as to the issuing of the stock and the payment therefor is not very satisfactory, but its unsatisfactory character results chiefly from the conduct of these defendants, Bendelari and Cook. In the first place a subpoena duces tecum was issued at the request of plaintiff for these defendants requiring them to produce at the trial the stock book and other books of the corporation. They did not produce them nor did they give any very satisfactory reason for their failure to do so. Their only excuse was that the books had been sent to St. Paul, and were there so far as they knew at the time of the trial. The evidence does show, however, the following facts: That S. Wax named as one of the incorporators was Sadie Wax, an employee of defendants, Bendelari and Cook; that she paid nothing for the 898 shares of stock which the articles of incorporation stated she subscribed and paid for. The plaintiff, not being able to procure the books of the corporation, was compelled to rely upon the testimony of the interested parties. He put Sadie

Wax upon the stand and she testified that she made transfers of the stock taken in her name when directed to do so by her employers, Bendelari and Cook. She could not state with any certainty to whom the stock was assigned, and whether or not it had all been assigned. She evidently was a straw woman used by Bendelari and Cook to manipulate the stock of the new corporation. Bendelari was also put upon the stand by the plaintiff and his mind seems to have been as much of a blank as that of the witness Wax; for in the beginning of his testimony he stated that he did not know how Miss Wax came to subscribe for 898 shares of the stock, and could not tell why she did it. The only thing about whcih this witness was certain was the fact that he had paid $5000 to the Bob White Mining Company for which he afterwards was given $5000 stock in the new corporation. He denied having any interest in the 898 shares of stock claimed to have been held by Miss Wax; denied having made any profit out of the transaction, or having received any compensation from the owners of the mine sold to the new corporation, but he was unable to tell how he paid the $5000 to the Bob White Mining Co., or when he paid it, and the account of the Bob White Mining Company with the bank nowhere showed a deposit in their favor at one time of the even sum of $5000. Defendant, Cook, was also put upon the stand by the plaintiff, and his testimony is also unsatisfactory, but we glean from his testimony some additional facts. While he is equally positive with Bendelari that he paid $5000 to the Bob White Mining Company which was used in the purchase of the mine, and while he also denies having received any profit, or having secured any commission from the owners of the mine that was sold to the corporation, yet before he gets through he does admit that he and Bendelari received $500 from the owners of the mine as a commission on the sale. We also learn from his testimony that of the $40,000 paid through the Bob White Mining Co., to the State Lead

and Zinc Company for the mine, at least $34,500 of this amount was furnished by the St. Paul people. He like Bendelari, was unable to tell whether the $5000 which he claims to have paid to the Bob White Mining Company was paid by his personal check, or by the firm check of Bendelari and Cook. The account of Bendelari and Cook with the bank was also in evidence, and covering a period of time from April 1st to August 7th the largest check drawn by the company during that period was $1119.30, so that it is apparent that it was not paid by the check of Bendelari and Cook. In the account of the Bob White Mining Company with the bank the largest deposit made at any one time was $8687. The next largest was $7610, and all the others were less than $5000, so that if either of these defendants has paid $5000 to the Bob White Mining Company he must have mingled it with other moneys placed to his credit at the same time, and there is no explanation of this from these defendants. Bendelari and Cook were the managers of the corporation.

A close examination of the testimony in this case convinces us that the real facts in connection with the organization of the Crocus Hill Mining Company and the handling of its stock are about as follows:

Defendants, Bendelari and Cook, were its promoters. Their purpose in promoting it, of course, was to make what they could out of it. The evidence shows that they received a commission of $500 in the deal when the property was transferred to the new corporation. This is not explained, but on the contrary is denied until, by a close examination, Cook was forced to admit that they had received it. This of itself shows that these promoters were not acting in good faith with the prospective investors in the corporation. The fact that 898 of the shares of this corporation were certified to by these defendants in the articles of association as being bona fide subscribed and fully paid up when, in fact, these shares were not subscribed at all, and not a cent paid thereon, but was held

by Miss Wax, an employee of these defendants, coupled with the further fact that defendant Bendelari denied all knowledge of why that was done, and the testimony of Miss Wax that she disposed of it as Bendelari and Cook directed, shows conclusively that that portion of the stock was being manipulated by these defendants for their own purpose. We suppose, of course, that the St. Paul parties who had put up money with the expectation that stock would be issued therefor received stock sufficient to cover the money they had advanced. Evidently Bondelari and Cook were controlling the other shares of the stock, and had the venture proven a success so that they would have been able to have disposed of it Miss Wax would have made the transfer of the stock and the proceeds of the sale would have gone into these defendants' pockets. All these facts, taken together, convinces us that so far as these two defendants were concerned their connection with the promotion, organization and manipulation of this corporation was a get-rich-quick scheme in which they were playing a safe hand, and holding themselves in a position to be ready to reap the lion's share of all the profits that might come from the investment, but should it prove a failure, to be in a position to claim that their stock was fully paid, and hence, no personal liability could attach to them. But if we give the defendants the benefit of the doubt, yet the evidence shows that the partnership, known as the Bob White Mining Company, was organized for the sole purpose of handling the organization of this corporation and the money that would be necessary for that purpose, and when the corporation was formed, the mine bought and transferred to it the Bob White Mining Company had served its purpose and was at an end. This company kept no books, had no settlement between its members, but went out of existence when the corporation came to life. Then these defendants stated that all they paid for their stock they paid to the Bob White Mining Company, a partnership, and the Bob White

Mining Company paid it to the State Lead and Zinc Company when the mine was purchased from it; therefore, unless the receipt of the money by the Bob White Mining Company can be shown it will appear that their stock was not, in fact, paid for. Cook testified, and it is all the evidence on that question, that at least $34,500.00 of the $40,000 paid for the mine was furnished by parties in St. Paul. The account of the Bob White Mining Company with the bank showed that all the money this Company handled was $36,500. The parties in St. Paul having furnished $34,500.00 there was left but $5500. of the $40,000. paid for the mine to be accounted for. So if these defendants paid anything toward the purchase of the mine they could not have paid more than $5500. This being true, they still owe for their stock $4500.

Respondents insist that the corporation is indebted to them and that they should at least be permitted to offset the amount of their debt against the judgment in plaintiff's favor. In this we think they are right. The evidence shows the corporation indebted to them in the sum of $255.00 at the date of the judgment, and this judgment, having been obtained by plaintiff in behalf of all the creditors of the corporation named in the deed of trust, including these defendants, they are interested in the judgment to that extent, and we see no reason why this amount should not be credited upon the judgment.

Defendants also insist that the case was tried in the lower court as a law case, and since a demurrer to plaintiff's testimony was sustained it was unnecessary for them to offer any testimony, and that if it is to be held to be an action governed by equitable rules of procedure, the cause, if the judgment be not affirmed, should be remanded for a new trial, and they be given a chance to offer further testimony.

From the record in this case it does appear that both parties regarded the proceeding as one at law when the case was tried, and ordinarily we should be disposed under such circumstances to remand the case for a new

trial; but in this case the plaintiff was compelled to rely upon the defendants themselves, and an employee of defendants to make out his case, and since these parties all testified fully at the trial, and it is also apparent that no one else knows the facts, there is nothing to indicate that anything new could be developed if a new trial were granted.

Our conclusion is that the finding of the court should have been in plaintiff's favor and that the amount defendants owe for unpaid subscription to stock of the corporation is $4500. The amount of the judgment after allowing defendants' offset of $255 is $3244.89 with interest since its rendition in April, 1909. The debt of defendants to the corporation for unpaid subscription to stock after allowing their offset is greater than the amount of the judgment.

The judgment of the circuit court will be reversed and the cause remanded with directions to set aside the finding in defendants' favor, and to enter an order awarding execution in plaintiff's favor against defendants, A. E. Bendelari and Frederick Cook for the sum of $2250 each, to be satisfied by the payment of the amount due upon the judgment. All concur.