CYRUS E. HODDE, Receiver, v. PETER HAHN, JAMES H. ROACH and VICTOR DIESING, Appellants.

Division Two, June 25, 1920.

1. **CORPORATION: Unpaid Stock: Action to Recover.** A subscription for the stock of a corporation whose articles of association represent its capital stock as fully paid up implies a promise on the part of the subscriber that he will pay for the stock in full, and authorizes an action against him by the corporation or its assignee or receiver, after its conditions have been performed, to recover the amount due and unpaid.

Hodde v. Hahn.

2. ———: ———: **Suit by Receiver.** Upon the failure of the stockholder to pay a stock subscription there arises a liability on his part in the nature of a debt to the corporation; and the receiver, being invested by his appointment by the court with the title of the property and the rights of action of the corporation, becomes the proper party to enforce obligations due it, by proper legal proceedings. The right of the receiver, under the order of the court, to institute and maintain an action for the balance due on unpaid stock represented to be full-paid-up, is well established.

3. ———: ———: **Estoppel.** The receiver is not estopped to maintain an action for unpaid stock subscriptions represented to be fully paid up, by a transfer by the directors, at their own suggestion and the decision of the creditors, to a trustee of all the properties and business of a corporation in financial straits, whose assets were practically worthless, except that it was still a going concern, the purpose being to permit the trustee to continue to operate the business in the hope that the returns might result in the payment of its debts, though such transfer proved to be a mistake.

4. ———: ———: **Burden: Payment in Property.** Where the articles of association of a corporation recite that its capital stock has been paid up in lawful money and that the same is in the custody of its board of directors, it is the duty of the stockholders, when sued for unpaid stock subscriptions, to show, if payment is pleaded otherwise than in money, that the property substitute for money, together with the money paid, was equal in money value to the par value of the stock.

5. ———: ———: **Payment in Property and Good Will: Consolidation of Companies.** Where the articles of association of a corporation recited that $50,000 of its capital stock had been paid up in lawful money, but its actual property consisted of the transfer of $7,000 in property and the good will of two other corporations, whose stockholders became the stockholders of the consolidated company, then the duty rested upon the stockholders of the consolidated company, when sued for the amount of their unpaid subscriptions, to show that the good will of the two old companies was in fact a real asset and had a value equal to the value placed upon it in their books; and where the two companies, whose assets and good will were transferred to the consolidated company and constituted its capital, during their business lives had sustained in one case an operating loss of 77 per cent and in the other of 66 per cent of their respective capitalizations, their good will had no value.

6. ——: ——: **Good Will: Definition.** Good will is the advantage
or benefit acquired by an establishment beyond the mere value
of capital stock, funds or property employed in the business, in
consequence of the general public patronage; and if in consequence
of the general public patronage, such declared advantage turns
out to be a disadvantage and a loss, the good will becomes nothing
more then an imaginary quantity.

7. ——: ——: **Sale of Stock.** The sale of their stock by stock-
holders of a corporation whose capital had not been paid up
as its articles represented, before suit brought by the receiver,
will not relieve them from liability to the creditors of the com-
pany for their respective balances due on such stock.

Appeal from St. Louis City Circuit Court.—*Hon. Thos.
C. Hennings,* Judge.

AFFIRMED.

*O. F. Karbe* and *S. C. Rogers* for appellants.

(1) Estoppel applies under the facts and circum-
stances here. Plaintiff is but the creditors and they
waived their rights, elected to forego pursuing the rights
they waived and are now estopped to hold these defend-
ants. It would be a double burden on them. 2 Cook on
Corporations, sec. 548, p. 1616; Brooks v. Brooks, 174
Pa. St. 519; Daugherty v. Poundstone, 120 Mo. App. 310;
Bigelow on Estoppel (6 Ed.), p. 732; 1 Cook on Corpora-
tions, p. 583, sec. 216; Willis v. Black, 117 Cal. 161; 10
Cyc. 665; 14 Corpus Juris, secs. 1544, 1621, 1633, 1644,
and notes; Morawetz on Private Corps. (2 Ed.) sec.
871; Lawrence v. Greenup, 97 Fed. 906; Berry v. Rood,
168 Mo. 335; McMahon v. Transit Co., 85 N. J. Eq. 544;
McClaren v. Franciscus, 43 Mo. 466; Hobbs v. Henley,
186 S. W. 981; State ex rel. Hayes v. Ellison, 191 S. W.
51; Bowman v. Anderson, 268 Mo. 28; Kelsay v. Bank,
166 Mo. 171. (2) The stock was fairly and properly paid
up in the first instance. Beebe v. Hatfield, 67 Mo. App.
615. (3) Goodwill is property. Milling Co. v. Hane-
brink, 247 Mo. 221; Pope-Turnbo v. Bedford, 147 Mo.
App. 698; Fox v. Glynn, 191 Mass. 344; Bloom v. Ins.

Agency, 91 Ark. 373; Mfg. Co. v. Hall, 61 N. Y. 230; Heneger v. Sundseth, 106 Minn. 133. The value of goodwill can be ascertained by its dividend producing capacity. Bank v. Home Lbr. Co., 118 Mo. 462; 14 C. J. 960, sec. 1487; Greer v. Lafayette Co. Bk., 128 Mo. 575. (4) Good faith is all that is necessary in setting a valuation upon property in such cases. 10 Cyc. 476, 477, 478 and notes; 2 Cook on Corps., sec. 423, p. 1213; Coleman v. Hagey, 252 Mo. 102. (5) The court should not have permitted plaintiff to prevail under the allegations of his petition and the evidence offered by him as to appellant Diesing, as he was not a stockholder subsequent to 1912; he had disposed of his stock prior to the insolvency of the corporation in March, 1914, and the transfer to the trustee. Sec. 9, art. 12, Mo. Constitution; Banta v. Hubbell, 167 Mo. App. 43; McClaren v. Franciscus, 43 Mo. 452; Miller v. Ins. Co., 50 Mo. 55; 1 Cook on Corp., p. 747, sec. 259; Secs. 3004-3006, R. S. 1909; Berry v. Rood, 168 Mo. 333. (6) The court based its judgment on the value of the assets at the time the receiver took charge. Under the circumstances in this case this was not proper. The value of the property turned into the corporation by these appellants individually at the time of the organization of the corporation in 1909 is the proper basis for estimating the liability and this enhanced by additional property acquired by it is the proper basis of recovery for unpaid stock subscription. (7) The liability is several and not joint. Perry v. Turner, 55 Mo. 418.

*Grant & Grant* for respondent.

(1) The stock of a corporation must be paid for in money or money's worth. If paid for in property then such property must be the fair equivalent of the par value of the stock. It is the duty of the stockholders and not the duty of the creditors to see that it possesses such value. Van Cleve v. Berkey, 143 Mo. 136; Berry v. Rood, 168 Mo. 316; Meyer v. Mining & Milling Co., 192 Mo. 188; Houston v. Edgar, 207 Mo. 301; Bank v. Rockefeller, 195

Mo. 15; Hequembourg v. Edward, 155 Mo. 520; Steam Co. v. Scott, 157 Mo. 525; Sawyer Bkg. Co. v. Independent Co., 168 Mo. 643; Shields v. Hobart, 172 Mo. 510; Rumsey v. Kain, 173 Mo. 560; Rogers v. Mining Co., 185 Mo. App. 672; Sec. 1312, R. S. 1909. (2) Good will may be considered a species of property for certain purposes. It may be sold; its willful destruction may be the basis of an action for damages; it may be taxed under appropriate statutes, but in states which hold that capital stock is a trust fund for creditors, it has never been held that it may take the place of "lawful money of the United States." It has no market value so that it can be readily disposed of to pay creditors. Good will has been defined by this court. Milling Co. v. Hanebrink, 247 Mo. 221. Assets, worth $7,000, of two dying corporations whose capital stock had been almost entirely depleted by losses in business cannot, by the fiction of an imaginary good will, be made by the stockholder to pay up capital stock of a new corporation with par value of $50,000. If the stockholders of a corporation dissolve it, organize a new corporation with the same stockholders and transfer all its assets to the new corporaton, the *status* of the parties is not changed, and the law will disregard the form, consider the substance of the transaction and treat the new corporation as a continuation of the old. Thompson v. Abbott, 61 Mo. 176; Winkelman v. Levee District, 171 Mo. App. 53; Many v. National Surety, 103 Mo. App. 721; Coffey v. Bank, 46 Mo. 140; Lighting Co. v. Hobart, 98 Mo. App. 235; Barrie v. United Rys., 138 Mo. App. 649. A corporation cannot capitalize its good will by paying up an increase of capital stock by an alleged good will. Coleman v. Booth, 268 Mo. 64. (3) The facts upon which an estoppel might be based are wholly lacking. The principles underlying estoppel are well settled. They have been stated in various ways. Henson v. Merc. Co., 48 Mo. App. 214; Acton v. Dooley, 74 Mo. 63; Hart v. Giles, 67 Mo. 175; Hequembourg v. Edwards, 155 Mo. 514; Spurlock v. Sproule,

72 Mo. 503; Osborn v. Court of Honor, 152 Mo. App. 652; De Lashmutt v. Teetor, 261 Mo. 412.

WALKER, C. J.—This is an action against appellants, and others not appealing, for alleged unpaid stock subscriptions. In January, 1909, the George Henseler Oil Company, a $10,000 corporation, was doing business in oils and kindred commodities in the City of St. Louis. None of these appellants were stockholders in this company. It enjoyed a lucrative business. The Mercantile Supply Company was a $50,000 corporation having $30,000 of its capital stock paid up. All of these appellants were stockholders therein. A suggestion of merger or consolidation of the two companies was made, agreed to and consummated in January and February, 1909. The Mercantile transferred all its assets and good will to the consolidated corporation, the Henseler Mercantile Oil & Supply Company, for stock issued to the several shareholders thereof to the extent of $25,000. The merged or consolidated company did business with varying success until in 1914. Some time in 1912 appellant Diesing, while the corporation was solvent, disposed of his stock. Appellant Hahn disposed of all his stock to his wife, who was a defendant below, saving four shares. In March, 1914, the directors realized the company was in financial straits and attempted to settle with their creditors. As a result there was a meeting of the creditors held on the 26th day of March, 1914, when there was presented to them an expert accountant's statement of the condition of the company. It was proposed to do anything the creditors might direct. The creditors finally appointed a committee of three to determine the course to be pursued. It decided to transfer the assets and property of the company to a trustee. In the meantime the creditors had charge of the affairs of the company. They prepared a deed, named their trustee, the transfer was made to him and he took charge without bond or the taking of an inventory or appraisement of the assets and attempted to operate the business. The first two

months he made a profit of $3,145. Thereafter the creditors enlarged the business, created various liabilities and assets began to depreciate and decrease and the liabilities increase until in October or November, 1914, when the trustee advised discontinuance, but the creditors were obdurate and a substitute trustee was appointed at the request of the Union Petroleum Company, one of the largest crditors. The new trustee attempted to operate the business until in March, 1915. The result was disastrous financially and the Union Petroleum Company applied for the appointment of a receiver, and the present plaintiff was appointed as such. According to the books of the company in March, 1914, the assets exceeded the liabilities, that is, the assets were in excess of $37,000 and the liabilities less than $34,000. During the operation of the trusteeship under the direction of the creditors the entire assets were dissipated, lost or squandered and the liabilities increased, with the result that when the receiver sold the assets on hand there was not enough to pay the liabilities incurred during the trust.

Thereafter the receiver brought this suit against the then and former stockholders for balances due on their unpaid stock.

The petition alleges the appointment of a receiver, sets forth the facts upon which the liabilities of the defendants were based, to-wit, the amounts due and unpaid by each upon their respective shares of stock, the assets on hand, the debts, the order authorizing the receiver to institute this action, the allowance of claims amounting to $27,037.94 and that there remained but $1,300 in the receiver's hands with which to pay the same, that the defendants were liable as subscribers for their unpaid stock, the incorporation of the Henseler Mercantile Oil & Supply Company, that the two former corporations had been so operated that their capital stock was impaired and that on the 30th day of January, 1909, there was but $7,253.72 as assets on hand in payment of the capital stock of the Henseler Mercantile Oil & Supply Company, that said articles represented $50,000 of the stock was

paid up and all of it subscribed, that there were no assets of the value of $50,000 paid in in payment of the capital stock, and that the difference between the value of the property paid over to said corporation and the face value of the stock was therefore due.

An account was prayed to be taken of the amount due the creditors and costs and the amount paid by each of defendants on account of the subscriptions and the stock issued to them, and that judgment be entered for the amount due respectively from each of the defendants on unpaid stock and for other relief.

The answers, which were several, were, first, general denials, and, second, pleas of estoppel. Other defenses were also pleaded but the assignment of errors does not render a reference to them necessary, there being no question as to the sufficiency of the pleadings. The reply was a general denial.

A hearing was had before the court in which it was decreed that plaintiff have and recover from defendants Frederick Nobbe, Peter Hahn, Belle Gregory, Victor Diesing, James H. Roach and William Grafeman the sum of $27,037.94 and that execution issue against said defendants as follows: against Frederick Nobbe, $21,793.58; Peter Hahn, $874.06; Belle Gregory, $1748.12; Victor Diesing, $874.06; James H. Roach, $874.06; William Grafeman, $874.06.

If for any reason any one or more of said apportionments could not be made out of the defendants then such apportionment so in default was to be levied out of the property of the other defendants in proportion to their respective liabilities as hereinbefore set forth.

After unavailing motions for new trial and in arrest, this appeal was perfected.

Much of the foregoing statement, seemingly irrelevant, is inserted that a clearer understanding may be had of the grounds of appellants' defense.

Error is assigned in the trial court's holding that the receiver was not authorized to maintain this action. The attitude assumed by appellants is best stated in

their own language, which is as follows: "Where the creditors of a financially embarrassed or insolvent corporation, after being duly advised of its condition, take over its business and assets while there is a dispute as to the amount of the liabilities and the value of the assets, without adjusting that question and also the question as to whether the assets, if disposed of and the proceeds applied to the debts, were sufficient to satisfy the debts, and they continue the business of the company after being warned by the receiver of the inadvisability of such a course and they refuse to heed his warnings and upon his resignation secure the appointment of another trustee and thereafter there is an utter failure of the business as conducted by the trustee and none of the original debts are paid but all of the assets dissipated, the creditors cannot disregard the assets they had in their possession and which they squandered or dissipated but which might have been applied by them on the liabilities, and then hold the stockholders for their unpaid stock, if there remained when the creditors took charge of the assets sufficient funds to pay the liabilities then extant."

In short, it is contended, that the receiver is but the creditors, whose conduct has been such as to estop him from prosecuting this action.

I. The right of the receiver, under the order of the court, to institute and maintain an action of the character here under review, is too well established to require discussion. [Lyons v. Corder, 253 Mo. l. c. 559 and cases.] Nor is it necessary in defining the legal status of a stockholder who has not paid for stock subscribed for by him, to say more than that the prevailing rule is that upon his having made the subscription, such a promise is implied that he will pay for the stock in full, as to authorize an action against him by the corporation or its assignee or receiver, after the conditions of the subscription have been performed, to recover the amount due and unpaid thereon. [Berry v. Rood, 168 Mo. 316; Shields v. Hobart, 172 Mo. 491.] The reason of this rule becomes apparent

*Action by Receiver.*

Hodde v. Hahn.

when we consider the relation which the stockholder and the receiver bear to the corporation. Upon the failure of the former to pay a stock subscription there is created a liability on his part in the nature of debt to the corporation; and the latter by his appointment being invested with the title of the property and the rights of action of the corporation, becomes the proper party to enforce obligations due to it by legal proceedings. [Coleman v. Hagey, 252 Mo. 102; Thompson v. Greeley, 107 Mo. l. c. 590.]

II.   This brings us to the affirmative defense that the receiver is estopped from prosecuting this action on account of the conduct of the directors. Preliminary to a consideration of this contention it is not inappropriate

Estoppel.

to refer briefly to what has been declared necessary to constitute estoppel. Our reports, as well as those of other jurisdictions, are replete with definitions of this defense. Among others are the following:  A preclusion in law which prevents a man alleging or denying a fact in consequence of his own previous act, allegation or denial of a contrary tenor. [Reid's Admr. v. Benge, 112 Ky. l. c. 814, 57 L. R. A. 253; Coogler v. Rogers, 25 Fla. l. c. 873; Gavin v. Graydon, 41 Ind. l. c. 566.]  A conclusive ascertainment of a fact by the parties, so that it can no longer be controverted between them. [Wilkins v. Suttles, 114 N. C. l. c. 556.] A fictitious statement treated as true. [Gen. Finan. Co. v. Liberator Bldg. Soc., 10 Ch. Div. 15.]  The conclusion of a truth. [Moore v. Willis, 9 N. C. l. c. 558.]  Where a man has done some act which the law will not permit him to gainsay or deny. [South v. Deaton, 113 Ky. l. c. 320.]  Where one is concluded from speaking against his own act or deed. [Demarest v. Hopper, 22 N. J. L. 619.]  Our rulings are in effect the same as the foregoing. [De Lashmutt v. Teetor, 261 Mo. 412; Osburn v. Court of Honor, 152 Mo. App. 652; Spurlock v. Sproule, 72 Mo. 503; Acton v. Dooley, 74 Mo. 63; Hart v. Giles, 67 Mo. 175; and numerous other cases cited in 16 Cyc. 679, note 1.]

As concisely applying the foregoing definitions, the St. Louis Court of Appeals in Henson v. Mercantile Co., 48 Mo. App. 214, holds that to constitute an estoppel three things must occur, first, fraudulent representations or withholding the truth when it is one's duty to speak; second, reliance upon such representations; third, the consequent act by the defrauded party to his disadvantage. Let the facts determine, therefore, whether the doctrine can be applied here. It is conceded that the management of the business of the company under the trusteeship created by the directors was a losing venture. The creditors, however, did nothing nor made any false representations which misled the defendants, including appellants, which caused them to execute the trust deed whereby the loss was incurred in their attempting in this manner to continue the business. The proposition and plan pursued did not originate with the creditors, but with the defendants.

As it now appears a mistake was made by the defendants as well as the creditors in attempting to continue the business. But the record discloses no act of the latter essential to sustain the plea of estoppel. The assets were such, due to the nature of the business, that they were practically worthless except to a going concern; if, therefore, the business was discontinued the property practically ceased to have any commercial value and if subjected to sale would have commanded no greater price than the separate value of the wood and iron it contained, classified by the respondent as ''junk.'' This will apply to the filling stations and other equipment. Moreover, a large proportion of the accounts receivable were afterwards shown to be uncollectable. If, under this state of facts, the affairs of the company had been liquidated, the assets, if any had been realized from a sale, would have been nominal. The receivership inaugurated by the directors, therefore, viewed from any vantage, was a mistake, but it does not appear that another course would have wrought a different pecuniary result or have resulted in any greater advantage. In

no sense was the conduct of the creditors such as to justify the plea of estoppel now sought to be interposed by appellants, whose legal relation to the company is nothing more than that of debtors made so by their own obligations.

III. The liability of a stockholder for unpaid stock, if not made clear by what has been said, is too well defined to admit of question. Our statute (Sec. 1312, R. S. 1909) provides explicitly that capital stock shall be paid up in lawful money of the United States. The articles of this company recited that this had been done and that it was then in the custody of the board of directors. It now appears that this statement was false and the receiver, to sustain this action, was only required to establish this fact and the several liabilities by reason thereof of the appellants, when it became their duty to show, if payment was pleaded otherwise than in money, that the substitute therefor was equal in money value to the extent of the par value of the stock.

*Payment: In Money Or Property.*

As we said in Van Cleve v. Berkey, 143 Mo. l. c. 136, "the proposition that the stock of a corporation must be paid for 'in meal or in malt,' in money or in money's value, is not a mere figure of speech but really has the significance of its terms. It may be paid for in property, but in such case the property must be the fair equivalent in value to the par value of the stock issued therefor; that it is the duty of the stockholders to see that it possesses such value; that when a corporation is sent forth into the commercial world, accredited by them as possessed of a capital in money, or its equivalent, in property, equal to the par value of its capital stock, every person dealing with it, unless otherwise advised, has a right to extend credit to it on the faith of the fact that its capital stock has been so paid and that the money or its equivalent in property will be forthcoming to respond to the legitimate demands. In short, that it is the duty of the stockholder, and not of the creditor, to see that it is so paid."

IV. In the case at bar the incorporators of the Hen-
seler Mercantile Oil & Supply Company stated in the ar-
ticles of incorporation, in the language of the
statute, that $50,000 of the capital stock of
this company had been paid up in lawful money of the
United States.

Good Will.

The creditors had a right to rely upon that state-
ment. Therefore, when the receiver showed that this
statement was false and that the incorporators had not
paid up the $50,000 in lawful money of the United States,
but, in truth, had merely transferred to the new company
property with a real value of some $7,000 and good will,
in payment of the remainder of the $50,000, then the
duty devolved upon appellants to show that what was
called good will was in fact a real asset and had a value
equal to the value placed on it in their books, to-wit,
$30,433.10 (afterwards increased to $34,268.73). A por-
tion of the $50,000 capital stock was never paid up, even
by good will. This is evident from the following facts:
Some of the defendants were owners of the Geo. Hen-
seler Oil Company, others were owners of the Mercan-
tile Oil & Supply Company. The two sets got together;
as a result, all the assets of the two companies were
transferred to defendants, including appellants, and
these in turn transferred them to the new company and
received back 500 shares of its stock as full paid. The
assets of the Geo. Henseler Oil Company were set out in
the books of the new company as amounting to $25,000,
in which was included good will at a valuation of $14,143.
However, in the agreement by which these assets were
turned over to the new company it was further pro-
vided that the new company should pay the debts of
the Geo. Henseler Oil Company, amounting to $7,606.75.
Some of these accounts receivable were worthless. When
these accounts and the amount of liabilities assumed by
the Geo. Henseler Oil Company were deducted from the
real assets, it left net assets actually turned over to the
new company by the Geo. Henseler Oil Company, good
will, of course, excluded, of only $2,219.56.

The assets of the Mercantile Oil & Supply Company, also transferred to the new company, were entered on the books of the Henseler Mercantile Oil & Supply Company at $25,000, and include good will, $16,290, and other assets, $8,710, but included in these assets are a number of accounts worthless at the time and subsequently charged to good will so as to increase the amount of good will on the books. Deducting these bad accounts from the real assets left net real assets of $5,592.55. From this is to be deducted a dividend paid to the stockholders of the Mercantile Oil & Supply Company by the new company, under an agreement to that effect, amounting to $800, making real net assets received by the new company from the Mercantile Oil & Supply Company of only $4,792.55. We have, therefore, in the first instance, capital stock to the extent of $30,433, represented by alleged good will of the two constituent companies, afterwards, to the extent of $34,268.73, being the aggregate debts of the Geo. Henseler Oil Company, the dividend paid to stockholders of the Mercantile Oil & Supply Company, worthless accounts receivable of the Mercantile Oil & Supply Company, and the remainder, $7,012.11, which represents tangible assets of approximately that value.

Conceding, therefore, that the capital stock of the corporation may be represented by good will of constituent companies where no money passes and that all the stockholders of the constituent companies become stockholders of the new company, did these constituent companies have any real good will? There was no competent proof offered of the value of the good will of either of these companies. One witness, it is true, testified that he thought the good will of the Mercantile Oil & Supply Company was worth $15,000, because that company had always paid a dividend and had also paid its debts. In this statement he evidently ignored the fact that these dividends had been paid out of the capital stock, as is sometimes done in mushroom organizations, to which class none of these companies, it is but fair to say, belonged. The position of the receiver was that the good

will of a company can only be estimated by the results of its business operations from the time it commences until it ceases to do business; and, where the consolidated company, as here, was controlled and managed by the same people as those who managed and controlled the constituent companies, good will may also be shown by the results of the business operations of the consolidated company. The books of these companies showed that the Geo. Henseler Oil Company started out with a paid-up capital stock of $10,000 and that after five years operation it wound up with assets of only $2,219.56. The Mercantile Oil & Supply Company commenced business with a paid-up capital of $30,000, of which $15,000 was preferred and $15,000 was common stock. The common stock paid no dividends, but during the five years of operation the preferred stock paid a dividend of eight per cent. At the close of these five years of business, the net assets of this company amounted to only $4,792.-55. Inasmuch as during that period the company paid out to its stockholders $5,200 in dividends, it is proper, in order to arrive at the total loss, to add this to the assets above stated, making $9,992.55. Deducting this from $30,000 assets with which the company started, leaves a balance of $20,000, which represents the net loss of the company in five years of operation. The two companies, therefore, during their business lives show an operating loss in the one case of 77 per cent and in the other case 66 per cent of their respective capitalizations. Under this state of facts the companies can hardly be said to have had a good will which can be represented by dollars and cents when the continued business was managed by the same persons as when operated at the loss stated. It was further shown that the consolidated business with the added good will of the former companies, when operated by the same persons who had owned and operated said former companies, resulted in no profit, but, on the contrary, suffered a net loss in its five years of business.

We have defined good will to be "the advantage or benefit acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein in consequence of the general public patronage," etc. [Milling Co. v. Hanebrink, 247 Mo. l. c. 221.] If in consequence of the general public patronage, such declared advantage or benefit turns out to be a disadvantage and a loss, then the good will becomes nothing more than a purely imaginary quantity. Paraphrasing a Pauline mysticism, it is neither "the substance of things hoped for nor the evidence of things not seen." Heb. xi-1.

V. During the five years of business, although this company possessed wagons, horses, tools, oil stations,
**Depreciation.** etc., yet it charged nothing off for loss, depreciation or waste, except $90 for the loss of a horse. Everthing else it owned or possessed was carried during the five years of business at orginal cost. The loss which, according to its books, was due to operation, is much less than the actual loss. An expert accountant found that there was an actual deficit of difference between assets and liabilities of $13,302.68. As we have shown, the company commenced business with real assets of about $7,000. Five years later, when the books were examined, not only had the capital stock been dissipated, but the company owed $13,000 more than it had assets; therefore, there was a total loss during this priod of $20,314.79. While this was but the estimate of an experienced accountant, the events proved it to be fairly accurate and tallied with that made by the receiver two years afterwards.

VI.. The sale of their unpaid stock by certain of the appellants before the institution of this suit will not relieve them from liability to the creditors of the
**Sale of Stock.** company for their respective balances due on such stock. [Eyerman v. Krieckhaus, 7 Mo. App. l. c. 457; Epstein v. Clothing Co., 67 Mo. App. l. c. 226.]

We have thus reviewed the facts to enable it to be determined whether there was a payment in any manner by these appellants of the amounts they respectively obligated themselves to pay upon their subscription for and the issuance to them of the shares of their stock. We do not find that the stock was paid for either "in money, meal or malt;" and if good will be held to be property, however its existence may be ascertained, it constitutes no factor in the determination of the matter at issue, because it did not exist; if it did exist, its value was negligible.

Under no view of the facts in this case have appellants interposed a meritorious defense and the judgment of the trial court is therefore affirmed. All concur.