JULES Q. STRONG, as Trustee in Bankruptcy of the Estate of ALLEGHENY TUBE & STEEL COMPANY, Appellant, v. RALPH CRANCER ET AL.—76 S. W. (2d) 383.

Division One, November 16, 1934.

1210

*Lee W. Grant* and *Barton N. Grant* for appellant.

1212

*Oliver J. Miller and Lashly, Lashly & Miller* for Joseph Kaiser, Lyman J. Kaiser, John Frerichs, Willard S. Tisdel, E. H. Thurston, Archibald E. Debow and Howard E. Rusk.

*Keil & Keil* and *Frank Coffman* for Emil Sieloff.

*Irl B. Rosenblum* for Mamie Baggerman, Joseph Cantoni, Mrs. A. H. Crancer, *alias* Nellie Crancer, Lester A. Crancer, Ralph Crancer, Charles A. Enders, George B. Fleischman, Mrs. Isabella Plough, Mike Reichert, Harry Schopfer, Nick Zahner, Albert H. Hitchings, Marcel J. Immer, Leigh C. Turner and Wilbur J. Carmichael.

*George Eigel* for Rudolf Schlatter.

HYDE, C.—This is an action in equity by a trustee in bankruptcy to collect from defendants, stockholders of the Allegheny Tube & Steel Company, a bankrupt corporation, amounts alleged to be due and unpaid for shares of capital stock. Defendants' demurrers presented the grounds that the petition does not state a cause of action; that there is a misjoinder of parties defendant; that there is a misjoinder of causes of action; that plaintiff is not entitled to equitable relief; and that plaintiff has an adequate remedy at law. The first ground really includes the last two grounds for the purposes of this case. The court sustained all demurrers; plaintiff refused to plead further; and judgment was entered for defendants, from which plaintiff appealed.

Plaintiff's petition alleged that the bankrupt was incorporated under the laws of this State January 29, 1929, with $160,000 capital, which consisted of 600 shares of preferred stock of $100 par value and 20,000 shares of common stock of $5 par value; that 15,311 shares of common stock were issued as fully paid and nonassessable, as follows: Lester A. Crancer 11,310; Ralph Crancer 4,000; George B. Fleischman 1; that the consideration therefor was the assets of a partnership of these defendants; and that, because the assets of the partnership were overvalued and the liabilities thereof were understated, the net worth of the same lacked at least $6,000 of paying into the corporation the par value of this common stock issued to them. Plaintiff's petition further alleged that in March, 1929, the bankrupt issued to Ralph Crancer, without any consideration, 90 shares of common stock as fully paid and nonassessable, and also issued to him 98 shares of preferred stock for which he paid only $4,080, leaving a balance due of $5,720 therefor; and that, in August, 1929, it issued to George B. Fleischman, without any consideration, 800 shares of common stock, for which there was due $4,000.

Plaintiff's petition further alleged that the capital of the bankrupt was increased by authorizing 1,400 more shares of preferred stock and 10,000 more shares of common stock; and that certain shares of each were issued to defendants, other than the three original incorporators, for which they had not fully paid and for which they were still liable to pay, as follows:

| Name | Shares Not Fully Paid For | Amt. Due |
|---|---|---|
| Mrs. Mamie Baggerman | 16 sh. common | $ 80.00 |
| F. W. Bailey | 20 sh. common | 100.00 |
| Joseph Cantoni | 6 sh. common | 30.00 |
| Joseph Cantoni | 6 sh. *preferred* | 80.00 |
| Wilbur J. Carmichael | 10 sh. common | 50.00 |
| Mrs. A. A. Crancer | 1 sh. common | 5.00 |
| Archibald E. Debow | 10 sh. common | 50.00 |
| Chas. A. Enders | 85 sh. common | 425.00 |
| Chas. A. Enders | 60 sh. *preferred* | 820.00 |
| John Frerichs | 10 sh. common | 50.00 |
| Fred J. Heimer | 15 sh. common | 75.00 |
| Albert H. Hitchings | 40 sh. common | 200.00 |
| Marcel J. Immer | 10 sh. common | 50.00 |
| Joseph Kaiser | 48 sh. common | 240.00 |
| Lyman J. Kaiser | 2 sh. common | 10.00 |
| Kohler & Co. (Edwin Kohler) | 2 sh. common | 10.00 |
| Thomas Moffat | 40 sh. common | 200.00 |
| Mrs. Grace Nestor | 10 sh. common | 50.00 |
| Isabella H. Plough | 1 sh. common | 5.00 |
| Isabella H. Plough | 1 sh. *preferred* | 10.00 |

| | | | |
|---|---|---|---|
| Mike Reichert | 2 sh. | common | 10.00 |
| Mike Reichert | 2 sh. | *preferred* | 40.00 |
| Dr. Howard A. Rusk | 5 sh. | common | 25.00 |
| Rudolf Schlatter | 20 sh. | common | 100.00 |
| Harry Schopfer | 10 sh. | common | 50.00 |
| Mrs. Louise Siegwart | 10 sh. | common | 50.00 |
| Emil Sieloff | 5 sh. | common | 25.00 |
| E. H. Thurston | 20 sh. | common | 100.00 |
| Willard S. Tisdel | 10 sh. | common | 50.00 |
| Leigh C. Turner | 5 sh. | common | 25.00 |
| Nick Zahner | 2 sh. | common | 10.00 |

Concerning these transactions plaintiff's petition alleged:

"That the bankrupt issued to all of the defendants herein from time to time shares of its stock, which said shares of stock were issued to defendants, respectively, as fully paid and nonassessable, and were received by defendants, respectively, but that nevertheless said defendants did not pay the par value of all the stock received by them, that all the defendants, in acquiring shares of stock of the bankrupt without paying the full par value thereof, committed a legal fraud against creditors and thereby became obligated to repay to this plaintiff for the benefit of creditors the difference between the par value of the stock acquired by them, respectively, and the amounts actually paid by them therefor."

In addition to the above matters the petition alleged that the corporation was adjudicated a bankrupt; that plaintiff was the duly appointed trustee; that claims had been allowed against it in bankruptcy in the sum of $124,903.58; that the assets of the bankrupt exclusive of the liability of defendants for capital stock sued for did not exceed $50,000; that all costs of administration would have to be paid out of these assets; and that the referee had made a finding that at least $76,361.19 more than the value of the assets in plaintiff's hands would be required to settle all claims and costs but that there was unpaid and still due upon the capital stock at least $34,563.71, which he authorized plaintiff to collect by proper proceedings at law or in equity. The prayer of plaintiff's petition was:

"That in order that a multiplicity of suits be avoided that an account be taken of the amount due the creditors of said bankrupt, of all costs and expenses, including reasonable counsel fees for bringing and prosecuting this suit, and of the amounts severally due from the defendants herein, and of the amounts paid by each on account of stock issued to them, respectively, and that judgment may be entered against each of the defendants herein for so much as may be found due, respectively, from defendants, and for such other and further relief as may seem to the court meet and proper."

Plaintiff at the outset misconceives the nature of the suit, saying in his brief that this is an action "to recover assets fraudulently

transferred by the bankrupt to the defendants respectively; said assets consisting of capital stock of the bankrupt, issued and delivered to the defendants respectively, as full paid and nonassessable, when in fact it was not full paid.'' So far as the corporation issuing stock is concerned, the shares of capital stock which it issues are its liabilities and not its assets. ▮ Stock certificates with a stated par value, although not a direct indebtedness of the corporation, evidence the fact that the holder has paid a certain amount to the corporation which it is liable to pay back to him, proportionately with other shareholders upon dissolution, out of its assets remaining after other creditors have been paid. (Of course it also determines his share of earnings.) [14 C. J. 383, sec. 503; 7 R. C. L., secs. 166, 171 and 280.] The shares are assets of the stockholders, to whom they are issued and their liability to pay the par value thereof are assets of the corporation. Therefore, a suit to collect this unpaid obligation of stockholders to the corporation is not a suit to set aside a fraudulent transfer and recover assets transferred, but it is a suit to collect a debt, namely, the amount the shareholder ought to have paid before the corporation issued the shares to him and thus assumed liability to him as a shareholder for the par value of the stock issued.

▮ It is a fundamental principle of equity jurisdiction that, when a plaintiff has a full, complete and adequate remedy at law, he cannot invoke the jurisdiction of a court of equity to obtain the same relief he could get at law. [Williams v. Walker, 333 Mo. 322, 62 S. W. (2d) 840.] Plaintiff, here, desires to collect certain definite amounts from defendants. Why can he not collect these amounts by a suit at law? Plaintiff's petition shows that it will require $76,361.19 to pay the debts of the bankrupt and costs of the bankruptcy, after the referee made the most liberal possible estimate of the amount that could be realized from its assets. It also shows that the total claimed to be due from all stockholders, upon their liability to pay the full par value of their stock, is considerably less than half this amount. There can be no question then that if the allegations of the petition are true, and we must take them as true in this proceeding, that the amount for which each of the defendants are liable, if they are liable for anything, would be the full amount stated in the petition as due from each of them. ▮ The basis of a stockholder's liability, under the circumstances disclosed here, is as stated by this court in Coleman v. Hagey, 252 Mo. 102, l. c. 146, 158 S. W. 829:

''That a creditor deals with the corporation upon the assumption that its stock is fully paid up, and if not paid and the corporation becomes insolvent, the unpaid portion is, with the other assets, impressed with a trust for the payment of the claims of existing and subsequent creditors; or, to state the proposition somewhat differently and to our mind more satisfactorily: a creditor deals with a cor-

poration relying upon the belief that the stock has been fully paid up; if unpaid, the liability is in the nature of a debt due the corporation by the shareholder whose delinquency becomes a fraud upon the creditor for which the latter has the right of redress in a proper tribunal.''

This is true because stockholders cannot ''put a false face on their papers of incorporation, knowing that they did not express the true condition, and have then allowed people to give credit to the concern on the faith of that showing.'' [Berry v. Rood, 168 Mo. 316, l. c. 332, 67 S. W. 644.] ''It is the duty of the stockholders to see that it possesses such value (as stated in their articles of incorporation); that when a corporation is sent forth into the commercial world, accredited by them as possessed of a capital in money, or its equivalent, in property, equal to the par value of its capital stock, every person dealing with it, unless otherwise advised, has a right to extend credit to it on the faith of the fact that its capital stock has been so paid and that the money or its equivalent in property will be forthcoming to respond to the legitimate demands.'' [Hodde v. Hahn, 283 Mo. 320, l. c. 331, 222 S. W. 799.] If such an action is brought by creditors against the stockholders they must proceed in equity because there is no privity between them which would give them the right to sue them at law. [See notes, 3 Am. St. Rep. 806, 7 A. L. R. 100; 12 A. L. R. 449; 36 A. L. R. 793; for our statutory remedy see Sec. 4572, R. S. 1929; Rood v. Mining Co., 157 Mo. App. 405, 139 S. W. 222.] The situation is, however, different when a receiver or trustee in bankruptcy is appointed to take over and wind up the affairs of the corporation. Such receiver or trustee represents and takes over not only certain rights of creditors but also rights of the corporation itself. The amounts which the stockholders ought to have paid for their stock are, under the trust fund theory, debts due to the corporation which, insofar as they are needed to pay debts, the receiver or trustee has the right to collect, the same as he has any other debt due to the corporation. [7 R. C. L. 198, sec. 169; 14a C. J. 994, sec. 3236; Coleman v. Hagey, 252 Mo. 102, l. c. 135-141, 158 S. W. 829.] Anything more than the proportion necessary to pay the debts of the total amount due from stockholders, of course, is not the concern of the receiver, trustee or creditors, but a matter only between the stockholders themselves.

There frequently are situations in which proceedings in equity must be brought by a receiver or trustee to collect from stockholders upon their liability for stock issued to them, without paying the par value thereof. Plaintiff cites a number of such cases and there is no question but that equity has jurisdiction when it is necessary to determine the amount which the stockholders will be required to pay and to apportion that amount among them. This is true in all cases where it does not require the total amount of the stockholders' lia-

bility to pay the debts of the corporation. In such a situation the first thing that must be done is to establish the total amount of stockholders' liability and then, with this as a basis, to make an apportionment among them. To do so, it is frequently necessary for an accounting to be taken to determine the amount of debts to be paid, the amount of assets to be applied thereon and the amount which the stockholders have failed to pay for their stock. This last matter is especially likely to call for an accounting where there are complicated accounts between the corporation and stockholders concerning stock paid for by property rather than money. Where it is not necessary to collect the full amount of the stockholders' liability an assessment must be made upon the stockholders of a certain proportion of their liabilities, and in the same proceeding the rights of the stockholders as between themselves, in the payment of same, may also be adjudicated. It is obvious that such an assessment cannot be made in a suit at law and it is also obvious that there is no necessity for any assessment in a case where the exact amount of each stockholder's liability is definitely known and is required to be paid in full.

The correct rule is well stated by the Supreme Court of Iowa, in Kosman v. Thompson, 211 N. W. 878, l. c. 885, as follows:

"If the action is for the recovery only of the full unpaid subscriptions or any portion thereof, which has already been ascertained and determined by the court (or can be, in any other manner, definitely known to the plaintiff), the action is then a mere money demand and must be at law, but if the demand for judgment against the subscriber is joined with equitable issues, which it is necessary to have adjudicated, and which renders the amount required indefinite and uncertain, or other grounds of equitable jurisdiction are present, then an action in equity will lie." [See, also, 215 N. W. 261.]

Likewise, the Supreme Court, in Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, l. c. 253, 47 L. Ed. 380, said:

"The amount demanded is the full amount of the par value of the shares held by each defendant. . . . Where the whole amount is sought to be recovered the proceeding must be at law. Where less is required, the proceeding may be in equity, and in such case an interlocutory decree may be taken for contribution, and the case may stand over for further action of the court, if such action should subsequently prove to be necessary—until the full amount of the liability is exhausted."

Many other authorities hold that, where the amount to be collected from each stockholder is definitely known there are no grounds for equitable relief but that the receiver must proceed to collect the same at law. [Potts v. Wallace, 146 U. S. 689, 13 Sup. Ct. 196, 36 L. Ed. 1135; Kelly v. Gill, 245 U. S. 116, 38 Sup. Ct. 38, 62 L. Ed. 185; Kosman v. Thompson (Iowa), 211 N. W. 878, and cases cited

l. c. 886 (see, also, 215 N. W. 261); 14a C. J. 1000, sec. 245, and cases cited.] The case of Wagner v. Eisenmenger (Mo. App.), 65 S. W. (2d) 108, cited by plaintiff, is a good example of a case where there is necessarily equitable jurisdiction. There the amount required to pay the creditors in full and take care of the costs of the administration of the bankrupt estate was $5,623.86. It was alleged that more than twice that amount was due from the stockholders, by reason of the fact that they had failed to pay $1,500 of their cash subscriptions and had turned in property at the valuation of $15,000 which was actually only worth $4,850. In such a situation, it was not necessary to collect from each stockholder the full amount of his liability. It was, of course, necessary for a court of equity to first determine and decree the proportion, of the amount necessary to pay debts, which each stockholder should pay.

Another such case is Hodde v. Hahn, 283 Mo. 320, 222 S. W. 799. There two corporations were consolidated and the stockholders of one received stock in a new company, for their interest in the old, of greater par value than the assets conveyed were worth. After the new company became insolvent, it was operated by the creditors and the remainder of its assets dissipated, which complicated the matter of determining the debts for which the stockholders were liable. These were found to be $27,037.94; and the stockholders had received $50,000 stock for which they gave assets worth only $7,- 253.72. It was, of course, necessary for a court of equity to determine the proportion, of their total liability, which the stockholders should be required to pay. The court not only had to determine the total amount to be paid by the defendant stockholders, but also had to fix the amount which each should pay as between themselves. More cases could be cited with the same or other complications which would require the intervention of a court of equity.

No such situation exists in this case because it appears from plaintiff's petition:

First: That the amount of debts to be paid are known to be so much in excess of the other assets of the corporation that the entire amount stated to be due from all the defendants will have to be collected in full since, even if it is all collected, there will still not be enough realized from all sources to pay the debts of the bankrupt.

Second: That the twenty-eight defendants listed in the petition as owing for common stock are alleged to owe the full par value thereof, which means that plaintiff claims they paid nothing whatever for it and still owe and must pay the full amount of its par value.

Third: That the four defendants listed as owing for preferred stock are alleged to owe therefor definite and certain amounts less than the full par value thereof. Therefore, plaintiff must know all

about these transactions because he is able to ascertain and state the exact amount due from each.

Fourth: That the three original incorporators paid for their original 15,311 shares of common stock of the total par value of $76,555 by turning over to the corporation the assets of their partnership which plaintiff alleges had a net worth that did not exceed $70,555 so that they lacked at least $6,000 of paying in full the par value of this stock issued to them. This is not stated as an absolutely definite amount but the value of property is always to some extent a matter of opinion and will vary between certain limits. However, there is no claim that it could be anywhere near the amount required to pay the deficiency between the assets and debts.

Fifth: That in the later transaction, Ralph Crancer, one of the original incorporators, received additional preferred stock for which he lacked $5,720 of paying the par value; that he received 90 shares of common stock for which he paid nothing and would therefore owe $450, and that, in another later transaction, Fleischman received 800 shares of common stock, for which he paid nothing, and owed the full value thereof, namely, $4,000.

All of these amounts, alleged to be due from each of the defendants, are definite and certain, except the transaction of the original incorporators and it is not so indefinite as to suggest that there is any need whatever for an accounting to ascertain the amount they owe thereon. As to this partnership property conveyed by the incorporators for their stock, it is not stated what kind of property it was and there is nothing in the petition to show that its value would be difficult to ascertain or that this could not readily be proven in an action at law. "The best considered authorities put equitable jurisdiction for an accounting upon three grounds, to-wit: The need of a discovery, the complicated character of the accounts, and the existence of a fiduciary or trust relation. The relief which is given in this action is an account and a judgment for the balance found due on taking the account. [1 C. J. 613, sec. 56.] The basis of equity jurisdiction in accounting is the inadequacy of a legal remedy." [Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606, l. c. 609.]

We hold that plaintiff had a full, complete and adequate remedy at law. In Hale v. Allinson, 23 Sup. Ct. 244, l. c. 253, supra, the United States Supreme Court, in holding that in such a situation the prevention of a multiplicity of suits was not grounds for equitable jurisdiction, said:

"It is clear that only two classes of questions remain to be decided: The first is whether a given stockholder was ever liable as such; and the second is whether, if he were originally liable, his liability has ceased, either in whole or in part. Manifestly, as it seems to me, the defendants have no common interest in these questions, or in the relief sought by the receiver against each defendant. The

receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defense, and defenses may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defenses are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except there is a common plaintiff who has similar claims against many persons. But as each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his codefendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability. Suppose A to aver that his signature to the subscription list was a forgery; what connection has that averment with B's contention that his subscription was made by an agent who had exceeded his powers? or with C's defense that his subscription was obtained by fraudulent representations? or with D's defense that he has discharged his full liability by a voluntary payment to the receiver himself? or with E's defense that he has paid to a creditor of the corporation a larger sum than is now demanded? These are separate and individual defenses, having nothing in common; and upon each the defendant setting it up is entitled to a trial by jury, although it may be somewhat troublesome and expensive to award him his constitutional right.''

In the present case each of the stockholders, who are alleged to have received stock subsequent to the incorporation without paying for it and from whom the plaintiff seeks to recover the full amount he claims they should have paid, must be sued at law and allowed their right to a jury trial. The only defendants who are shown to have any common interest or liability are the three original incorporators who, as members of a partnership, conveyed their partnership assets to the corporation for stock. While they may be sued jointly, no reason appears why such suit should not be an action at law. We hold that the court properly sustained defendants' demurrers.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.